OUACHITA PARISH* 4TH JUDICIAL DISTRICT COURT* STATE OF LOUISIANA

AARON LARRY BOWMAN

VS.

OUACHITA PARISH SHERIFF'S OFFICE,
SHERIFF JAY RUSSELL, METRO NARCOTICS UNIT,
MONROE POLICE DEPARTMENT, LOUISIANA
STATE POLICE DEPARTMENT, UNIVERSITY OF
LOUISIANA AT MONROE POLICE DEPARTMENT,
THE CITY OF MONROE, PARISH OF OUACHITA,
AND DONOVAN GINN

CASE NO.

20-2498

*FILED*

SEP 21 2020

*Janae Wools*

DEPUTY CLERK
4TH JUDICIAL DISTRICT COURT
OUACHITA PARISH, LA

_____

DEPUTY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PETITION FOR DAMAGES FOR POLICE MISCONDUCT AND EXCESSIVE FORCE**

NOW COMES Petitioner, AARON BOWMAN, a person of the full age of majority.
Petitioner is domiciled in the State of Louisiana, Parish of Ouachita, and asserts the following
claims for relief:

1.

Made Defendants herein are the following:

A. **OUACHITA PARISH SHERIFF'S OFFICE,** a governmental entity and
   department of Ouachita Parish, Parish of Ouachita and not an arm or instrumentality
   of the State of Louisiana.

B. **SHERIFF JAY RUSSELL,** in his official capacity, a person of full age and majority
   who at all times was and is Sheriff of the Ouachita Parish Sheriff's Office in Ouachita
   Parish, Louisiana.

C. **METRO NARCOTICS UNIT,** a governmental entity and department of Ouachita
   Parish, Parish of Ouachita and not an arm or instrumentality of the State of Louisiana.

D. **MONROE POLICE DEPARTMENT,** a governmental entity and department of the
   city of Monroe, Parish of Ouachita and not an arm or instrumentality of the State of
   Louisiana.

E. **LOUISIANA STATE POLICE DEPARTMENT,** a governmental entity and
   department of Ouachita Parish, Parish of Ouachita and not an arm or instrumentality
   of the State of Louisiana.

CASE ASSIGNED TO:
CV. SECT. 1

RECEIVED 2020 SEP 21 P 2:45

F. **UNIVERSITY OF LOUISIANA AT MONROE POLICE DEPARTMENT,** a governmental entity and department of the city of Monroe, Parish of Ouachita and not an arm or instrumentality of the State of Louisiana.

G. **CITY OF MONROE, PARISH OF OUACHITA**, a local governmental entity and body politic created by statute, being a municipality and political subdivision of the State of Louisiana but not an agency, or department, or arm of the State of Louisiana.

H. **DEPUTY DONOVAN GINN**, also made Defendant herein individually and in his official capacity as an Officer in the Ouachita Parish Sheriff's Department, a person of full age and majority, domiciled in the Parish of Ouachita.

2.

Jurisdiction is proper in this Honorable Court pursuant to 28 U.S.C. section 1331 and 1367, inasmuch as this matter arises under 42 U.S.C. section 1983, *et seq.*

3.

Venue is proper in this Honorable Court in part because the actions giving rise to this suit occurred in Ouachita Parish, and all of the parties involved are domiciled in Ouachita Parish.

4.

All officers or deputies involved are believed to be members of Ouachita Parish Sheriff's Department's Special Crimes Apprehension Team (hereinafter referred to as "SCAT TEAM"), which is believed to be comprised of approximately 10 specially trained deputies.

5.

The SCAT team conducts high intensity patrol in problem areas-targeting drug dealers, gang activity and other felony crimes in progress. SCAT targets any recurring crimes which require specialized surveillance or covert operations in any area in the parish as well as assists other agencies including the Monroe Police Department, West Monroe Police Department, Louisiana State Police, Richwood Police Department, Sterlington Police Department, University of Louisiana at Monroe (ULM) Police Department, and the Metro Narcotics Unit.

6.

On or about May 30, 2019, Petitioner noticed a white truck, which appeared to be the police, behind him while on his way home to 1500 South 3rd Street, Monroe La.

7.

Petitioner proceeded home as he lived a few streets over from his original destination. Once he made it home, the deputies/officers pulled into his driveway behind him.

8.

Deputy Donovan Ginn and other officers proceeded to ask Petitioner questions, Petitioner kept his hands in plain view where all officers could view them, as he is familiar with the process.

9.

One of the officers opened his car door and begin questioning him as to whether he had anything on him. Petitioner alleges that the officers were referring to drugs or weapons, and Petitioner responded that he had none.

10.

Petitioner asserts that the officers began to pull him out of his vehicle, while other officers begin to arrive on the scene.

11.

Petitioner asserts that he was dragged to the ground, face down and officers began to hit and kick him.

12.

Petitioner asserts that at no time did he resist any of the officers, and the officers continued to beat him for a period of time.

13.

Petitioner sustained multiple lacerations; including, a cut to the top of his head, a fractured arm, and broken ribs amongst other ailments. Petitioner does not recall an exact number of deputies/officers involved in the beating.

14.

Petitioner is a dialysis patient, and the beating was extremely detrimental to his health.

15.

Petitioner believes that the deputies/officers involved were wearing body cameras at the time of the incident and has requested through a public record's request to receive the footage. Petitioner is not certain as to whether said footage has been destroyed.

16.

Petitioner asserts that the published police report is fabricated, and aspects of Deputy Ginn's narrative is untrue. (Exhibit A) Petitioner asserts that he was not the aggressor but was actually beaten terribly by Deputy Ginn and other officers.

17.

Petitioners girlfriend at the time, Teresa Criff, and her daughter, Te'Asia Martin were present during the incident whereby it was learned that the incident was recorded.

18.

Teresa Criff, as a witness, asserts that Petitioner was not resisting at any time to the officers but was attacked by the officers instead.

19.

The video footage was captured by Petitioner's home security camera. (Exhibit B). The video footage captures an officer swinging downwards, punching Petitioner repeatedly. The deputies/officers who attacked Petitioner inflicted a severe laceration to his head, which required several stitches, fractured ribs and a fractured right arm.

20.

Deputy Ginn stated in the police report that Teresa Criff as owner of the vehicle gave consent to search the vehicle and nothing illegal was found. Petitioner informed the officers of this fact when he was first questioned; however, the officers proceeded to pull him out of the vehicle and beat him senselessly anyway. The officer was heard telling the witnesses to go back in the house.

21.

The EMS Ambulance was contacted and arrived on the scene, and Petitioner was transported to St. Francis Medical Center where he was treated. Petitioner later followed up with Glenwood Regional Medical Center sometime after.

22.

Petitioner was never arrested on the scene for any criminal activity. Oddly enough, Deputy Ginn obtained an arrest warrant for Petitioner approximately 3-4 days later and bond was set at $4,650.

23.

Petitioner alleges that the actions by the Officers were unreasonable, unnecessary, violated police protocol and procedure, excessive force, negligent, an exercise of bad judgment, and violated Petitioner's 4th and 14th Amendments of the United States Constitution and certain Louisiana Constitutional rights.

**42 USC SECTION 1983, the 4th and 14th AMENDMENTS**

24.

Petitioner asserts that all Defendants are persons for purposes of 42 U.S.C. Section 1983.

Petitioners assert that all Defendants are liable pursuant to 42 U.S.C. Section 1983 which provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

25.

Petitioner herein seeks vindication of certain rights conferred upon him under the 4th and 14th Amendments to the United States Constitution including the rights to be free from unreasonable seizure and excessive force and that the Defendants did violate on May 30, 2019 these rights owed to Petitioner, Mr. Aaron Bowman.

26.

Petitioner brings these 42 U.S.C. Section 1983 actions against Officer Donovan Ginn and other officers in their individual capacities.

27.

Petitioner also brings these claims against the Ouachita Parish Sheriff's Department, Sheriff Jay Russell, Monroe Police Department, City of Monroe, Louisiana State Police, ULM Police Department, Metro Narcotics Unit, for the following:

1. Improper screening of Deputy Donovan Ginn and other officers who participated in the beating;

2. Hiring of Deputy Ginn and other negligent officers;

3. Failing to properly train and supervise them regarding the constitutional limitations of the use of excessive force;

4. Failure to promulgate and operationalize a constitutional use of excessive force policy, and

5.   Other claims described herein including the deliberate indifference to the protection of Petitioner's constitutional rights.

28.

Petitioner also brings these actions under the 4th and 14th Amendments to the United States Constitution for deprivation of his constitutionally protected rights. These rights include due process and equal protection of the laws under the 14th Amendment as well as the rights guaranteed under the 4th Amendment such as the right to be free from unreasonable searches, seizures, and excessive force. The Defendants violated these rights owed to Petitioner on May 30, 2019.

29.

The 14th Amendment of the United States Constitution provides in pertinent part, "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by both or affirmation, and particularly described in the place to be searched, and the person or thing to be seized."

30.

Petitioner alleges the Defendants were acting in the course and scope of their employment when they committed acts under the color of law and deprived Petitioner of his rights secured by the 14th Amendment of the United States Constitution.

31.

The Defendants, while acting in their official capacities as police officers, deprived Petitioner of liberty without due process of law, made an unreasonable seizure of his person and thereby depriving Petitioner of his rights and privileges as guaranteed by the 4th and 14th Amendments of the United States Constitution.

32.

By using excessive force described in this petition when it was not objectively reasonable to do so, the Officers deprived Petitioner of his constitutionally protected right of life and liberty without due process of law.

33.

The conduct, including actions and omissions of the Defendants while in the course and scope of their employment was excessive and unreasonable to say the least and was done

intentionally, willfully, maliciously, and with deliberate indifference and reckless disregard for the natural probable consequences of their acts.

34.

The actions of the Defendants were done without justification and without basis in policy or reasonable standards.  Their actions were intentionally calculated and did cause serious physical and emotional pain and suffering to Petitioner in violation and deprivation of his constitutional rights protected under 42 U.S.C 1983 as well as the 4th and 14th Amendments to the United States Constitution, including the right to be free of unreasonable seizures and use of  unreasonable and unjustified, excessive force.

35.

As the above and foregoing allegations demonstrate, Defendants are liable unto Petitioner under the doctrine of *respondeat superior* for Defendant Ginn and other officers for (a) assault, (b) battery (excessive force), (c) negligent and intentional infliction of emotional distress, (d) cruel treatment, (e) false arrest/imprisonment, (f) malicious prosecution, (g) violation of the Constitution and other laws of the United States and of the State of Louisiana, (h) deliberate indifference to the rights, safety, and dignity of Petitioners, and for all other acts and omissions as will be shown at trial.

### TORT CAUSES OF ACTIONS

36.

Petitioner asserts that the Defendants are liable pursuant to Louisiana Code of Civil Procedure Articles 2315, 2316, 2317, and 2320.

37.

Petitioner asserts that the Defendants are liable pursuant to Louisiana Code of Civil Procedure 2315, which requires that every act whatever man that causes damage to another obliges him by whose fault it is to repair it.

38.

The Defendants, Deputy Ginn and other officers did in fact assert excessive force by beating Petitioner, in which they inflicted great bodily harm when Petitioner posed no imminent threat of danger or great bodily harm to any of the officers.

39.

The Defendants could have de-escalated the situation in order to gain control of the setting;

including but not limited to, verbal judo, reporting the incident to a supervisor, and all other acceptable police tactics short of unreasonable and excessive force, which will more fully be shown at trial.

### 40.

Petitioner avers that Defendants are liable pursuant to Louisiana Code of Civil Procedure Article 2317, which provides that individuals are responsible not only for damage occasioned by their own acts, but also for damage caused by acts of persons for whom the individual is answerable, or of the thing which the individual has in his custody.

### 41.

Petitioner avers that Defendants are liable pursuant to Louisiana Code of Civil Procedure Article 2320, which provides that employers are answerable for the damage occasioned by their employees in the exercise of the functions in which they are employed.

### 42.

Defendant Officers were acting under the direction and control of Defendants Ouachita Parish Sheriff's Office, Monroe City Police Dept., Louisiana State Police Dept, ULM Police Dept., Sheriff Jay Russell, City of Monroe, and Metro Narcotics Unit at the time of the incident. Acting under color of law and pursuant to official policy and custom, Defendants through its Police Departments were negligent in hiring, training, and retention of Defendants.

### 43.

Defendants through its Police Departments knowingly, recklessly, or with deliberate indifference and callous disregard of Plaintiff's rights, failed to instruct, supervise, control Defendant Officers from depriving Petitioner of his constitutional and statutory rights, privileges and immunities under Federal and the laws and Constitution of the State of Louisiana.

### 44.

Defendants directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant, Officers.

45.

As a direct and proximate cause of the acts or failure to act as set forth in above, Petitioner suffered physical injury and severe mental anguish in violation of their violation of their constitutional and statutory rights guaranteed under the Fourth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. section 1983.

46.

Defendants breached their duty owed to Petitioner in this matter because of their unnecessary, negligent, and use of excessive force, which in fact caused the substantial injuries of Petitioner.

47.

Petitioner believes that the Defendants are liable pursuant to Article Section 2 of the Louisiana State Constitution, which provides that no person shall be deprived of life, liberty, or property except by due process of law.

48.

Petitioner believes that Defendants are liable pursuant to Louisiana Revised Statute 42: 1441.3 which provides that municipalities are responsible for the actions, offenses, and torts of their officials and deputy officials.

49.

Petitioner asserts that the Defendants are liable for the injuries and damages that Petitioner sustained due to the acts and/or omissions of negligence and/or fault that are included, but not limited to the following:

 a) the excessive use of force against Mr. Aaron Bowman;

 b) failure to employ alternative modes of de-escalating the situation;

 c) failure to act reasonably as a prudent police officer;

 d) violation of applicable law enforcement standards;

 e) failure to ensure the safety of other citizens in the area; and

 f) the acts and/or omissions which may be fully shown at trial.

50.

Plaintiff itemizes his damages as follows:

 1. Damages for assault and battery (excessive force)

2. Damages for negligent and intentional infliction of mental and emotional distress due to outrageous conduct

3. Damages for filing false cover charges

4. Past mental anguish

5. Future mental anguish

6. Past and present suffering

7. Past Loss of Enjoyment of Life

8. Future Loss of Enjoyment of Life

9. Past medical expenses

10. Future medical expenses

11. Punitive damages under Section 1983 for torture and injury done with malice

12. Attorney's fees and court costs

13. Petitioner prays for such damages as reasonable in the premises and all equitable relief.

Petitioner demands judgment against Defendants, **OUACHITA PARISH SHERIFF'S OFFICE, SHERIFF JAY RUSSELL, METRO NARCOTICS UNIT, MONROE POLICE DEPARTMENT, LOUISIANA STATE POLICE DEPARTMENT, UNIVERSITY OF LOUISIANA AT MONROE POLICE DEPARTMENT, THE CITY OF MONROE, PARISH OF OUACHITA, AND DONOVAN GINN,** jointly and severally for compensatory damages and further demands judgment against Defendants, jointly and severally for punitive damages, plus the costs of this action, attorney fees and such other relief, as the Court deems just and equitable.

Petitioner prays that this Honorable Court honor his request to file this instant Suit on this date, due to The Supreme Court of Louisiana's and the emergency declared statewide declaration by Louisiana Governor John Bel Edwards' Order whereby an emergency suspension of prescription and preemption applies. (Exhibit C) Further, Petitioner prays that this Honorable Court accept this instant Suit filing based on Act VI. Section 5828 and CC Article 3472.1 to extend on behalf of the extension of prescription and preemption during 2020 Covid-19 Public Health Emergency.

**WHEREFORE**, Petitioner, **AARON BOWMAN,** individually prays that this Petition be deemed good and sufficient and that after due proceedings are had, judgment be rendered on behalf of Petitioner and against Defendants for the foregoing general and special damages, punitive damages, attorney's fees, costs, interest, and other recoverable damages and appropriate relief.

Respectfully submitted,

**Donecia Banks-Miley**
Pleasant, Williams & Banks-Miley Law Group, LLC
901 N. 3rd STREET
MONROE, LOUISIANA 71201
PHONE: 318-605-4607
FACSIMILE: 318-605-4617

BY: _____
                DONECIA BANKS-MILEY, #35641
                ATTORNEY FOR PETITIONER

**Please serve with copy of Petition:**

**DEPUTY DONOVAN GINN**
400 St. John Street
Monroe, LA 71201

**OUACHITA PARISH SHERIFF'S OFFICE**
400 St. John Street
Monroe, LA 71201

**SHERIFF JAY RUSSELL**
400 St. John Street
Monroe, LA 71201

**UNIVERSITY OF LOUISIANA MONROE
POLICE DEPARTMENT**
(Filhiol Hall)
3811 DeSiard Avenue
Monroe, LA 71209

**METRO NARCOTICS UNIT**
500 Natchitoches Street
West Monroe, LA 71291

**LOUISIANA STATE POLICE DEPARTMENT**
1240 LA-594
Monroe, LA 71203

**MONROE POLICE DEPARTMENT**
700 Wood Street
Monroe, LA 71201

**CITY OF MONROE**
**Through City Attorney Angie Sturdivant**
 400 Lea Joyner Espy Monroe, LA 71201

**Please mail a copy to:**
**Donecia Banks-Miley, ESQ.**
Pleasant, Williams, & Banks-Miley Law
901 N. 3rd Street
Monroe, LA 71201

**FILED**

OPSO CASE NO:2019-00032327

**STATE OF LOUISIANA**
**PARISH OF OUACHITA**
**4TH JUDICIAL DISTRICT**
**ARREST WARRANT**

SEP 21 2020
DEPUTY CLERK
4TH JUDICIAL DISTRICT COURT
OUACHITA PARISH, LA

**FILED**
JUL 0 3 2019
DEPUTY CLERK
4TH JUDICIAL DISTRICT COURT,
OUACHITA PARISH, LA

State of Louisiana
Versus
**AARON LARRY BOWMAN**

**1500 South 3rd Street**
**Monroe, LA, 71202**

**DOB: 12/17/1974**
**SSN: 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**
**Black Male**

**CASE ASSIGNED TO:**
**CR. SECT. 2**

TO ANY COMMISSIONED PEACE OFFICER:

WHEREAS, complaint has been made to me under oath and under penalty of perjury, by **Badge 2360#, Deputy Donovan Ginn , an officer with Ouachita Parish Sheriff's Office** charging one **AARON LARRY BOWMAN** with

1 Count of RS32:79--IMPROPER LANE USAGE-- (MISDEMEANOR)
1 Count of RS14:108.1--FLIGHT FROM AN OFFICER; AGGRAVATED FLIGHT FROM AN OFFICER-- (MISDEMEANOR)
1 Count of 14:108.2--RESISTING AN OFFICER WITH FORCE OR VIOLENCE--(MISDEMEANOR)
1 Count of RS14:34.2--BATTERY OF A POLICE OFFICER-- (FELONY)

Now, therefore, you are hereby commanded, in the name of the State, to apprehend and arrest the said accused to be brought before our Court to answer the said complaint.  You are further commanded to keep the said accused in safe custody pending a session of the Court, or until released according to law, and this shall be your warrant.

Given under my official signature, this _____3_____ day of  _____June_____ , 2019_____.

Stephens H Winters

Judge, 4th Judicial District Court

Page 3 of 6

Monday, June 03, 2019
22:09:00

OPSO CASE NO:2019-00032327

Judge, 4TH Judicial District
State of Louisiana

Monday, June 03, 2019
22:09:00

4TH JUDICIAL DISTRICT COURT

**FILED**

STATE OF LOUISIANA



JUL 0 3 2019

VERSUS

DEPUTY CLERK
4TH JUDICIAL DISTRICT COURT,
OUACHITA PARISH, LA

Aaron Larry Bowman

# BAIL ORDER

IT IS ORDERED that the bail on the defendant named above is hereby fixed as set forth herein below.

IT IS ORDERED that the Sheriff of the Parish of Ouachita and his duly authorized deputies are authorized to accept the bail.

IT IS ORDERED that the defendant named above, in posting the bond shall have the right to select any of the types of bail specified in Article 339 of the Louisiana Criminal Code. However, they may only select an unsecured personal surety bail or bail without surety if authorized by further orders of the Court.

| Charges | Amount | Description | Statute Type |
|---|---|---|---|
| RS32:79 IMPROPER LANE USAGE | $150.00 | | MISDEMEANOR |
| RS14:108.1 FLIGHT FROM AN OFFICER; AGGRAVATED FLIGHT FROM AN OFFICER | $1,500.00 | | MISDEMEANOR |
| 14:108.2 RESISTING AN OFFICER WITH FORCE OR VIOLENCE | $1,000.00 | | MISDEMEANOR |
| RS14:34.2 BATTERY OF A POLICE OFFICER | $2,000.00 | | FELONY |
| Total: | $4,650.00 | | |

Bond Conditions (if any):

SIGNED on this  3   day of _____ June _____ ,2019.

_H. Stephens Winters_

Page 5 of 6

Monday, June 03, 2019
22:09:01

TRUE COPY

DEPUTY CLERK
4TH JUDICIAL DISTRICT COURT
OUACHITA PARISH, LA

# STATE OF LOUISIANA
## PARISH OF OUACHITA
## 4TH JUDICIAL DISTRICT
### ARREST WARRANT



**FILED**

State of Louisiana
Versus
**AARON LARRY BOWMAN**

**1500 South 3rd Street**
**Monroe, LA, 71202**

**DOB:** 12/17/1974
**SSN:** 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
**Black Male**

## CASE ASSIGNED TO:
# CR. SECT. 2

TO ANY COMMISSIONED PEACE OFFICER:

WHEREAS, complaint has been made to me under oath and under penalty of perjury, by **Badge 2360#, Deputy Donovan Ginn , an officer with Ouachita Parish Sheriff's Office** charging one **AARON LARRY BOWMAN** with

1 Count of RS32:79--IMPROPER LANE USAGE-- (MISDEMEANOR)

1 Count of RS14:108.1--FLIGHT FROM AN OFFICER; AGGRAVATED FLIGHT FROM AN OFFICER-- (MISDEMEANOR)

1 Count of 14:108.2--RESISTING AN OFFICER WITH FORCE OR VIOLENCE-- (MISDEMEANOR)

1 Count of RS14:34.2--BATTERY OF A POLICE OFFICER-- (FELONY)

Now, therefore, you are hereby commanded, in the name of the State, to apprehend and arrest the said accused to be brought before our Court to answer the said complaint. You are further commanded to keep the said accused in safe custody pending a session of the Court, or until released according to law, and this shall be your warrant.

Given under my official signature, this _____3_____ day of _____June_____ , 2019____.



RECEIVED
JUL - 8 2019
OFFICE OF OUACHITA PARISH

*H. Stephens Winters*

Stephens H Winters

Judge, 4th Judicial District Court

Page 3 of 6

Monday, June 03, 2019

## OUACHITA PARISH SHERIFF'S OFFICE
### OFFENSE REPORT
2919-00032327

### NARRATIVE

On 5/30/19 I, Deputy D. Ginn observed a white Lincoln MKX (Temp Tag) traveling north on Marx Street cross the center line with both front and rear driver side tires. I then activated emergency lights and sirens, initiating a traffic stop, Marx Street at Winnsboro Road. The vehicle then traveled across Winnsboro Road and on to South 3rd street, increasing speed, ignoring all visible and audible signals. The vehicle then continued down South 3rd Street, pulling in to 1500 South 3rd Street and finally coming to a complete stop. I then made contact with the driver of the vehicle, Aaron Bowman and advised him to exit the vehicle at which time he refused to comply and began stating he did not do anything wrong. I advised Aaron again to exit the vehicle at which time he complied. I then attempted to secure him handcuffs at which time he pulled away in a violent manner in an attempt to evade arrest. Aaron then attempted climb back in to his vehicle and over to the passenger side at which time I removed him the vehicle and a brief struggle ensued. Aaron then began swinging his arms at me and screaming he did not anything wrong. Aaron then struck me on the top of the head with a closed fist. While attempting to secure Arron in handcuffs he pulled his arms under his body, refusing to give Deputy his wrist. After brief struggle Aaron was secured in handcuffs. I advised Aaron of his rights per Miranda which he stated he understood and chose to waive. Aaron stated he observed the lights and audible sirens but was scared to pull over. He stated just wanted to park his vehicle at his residence incase he went to jail.

Due to Aaron having a laceration to his head, EMS was contacted and arrived on scene a short time later. I then unsecured Aaron to be treated by EMS at which time he was transported to St. Francis hospital. I then made contact with the owner of the vehicle, Teresa Criff who was at 1500 South 3rd Street. I then asked for and was granted verbal consent by Teresa to search her vehicle and its contents which yielded negative results. Due to Aaron not being arrested on scene a warrant was requested for the listed charges. The vehicle was then released to Teresa.

On 6/3/19 I, Deputy D. Ginn obtained an arrest warrant for Aaron. The warrant was approved and signed by Judge Winters with a bond amount set at $4,650. The warrant was secured and later filed with Ouachita Parish Clerk of Court Office. Having no further information show this case closed.

| 2350 GINN, DONOVAN | 05/30/2019 | WYLES, CHRISTOPHER | 06/03/2019 |

# OUACHITA PARISH SHERIFF'S OFFICE

### OFFENSE REPORT

CASE# 2019-00032327

| EVENT | | |
|---|---|---|
| REPORTED DATE/TIME **05/30/2019 21:41** | OCCURRED INCIDENT TYPE **Traffic Complaint Investigation** | CASE STATUS **Cleared** **05/30/2019** |
| OCCURRED FROM DATE/TIME **05/30/2019 21:41** | OCCURRED THRU DATE/TIME **05/30/2019  21:41** | LOCATION OF OCCURRENCE **Marx ST** **Monroe, LA** |

| OFFENSES | | STATUTE/DESCRIPTION | COUNTS | ATTEMPT/COMMIT |
|---|---|---|---|---|
| | 01 | **32:79** **Improper Lane Use** | 1 | Completed |
| | 02 | **14:108.1A** **FLIGHT FROM AN OFFICER -AGGRAVATED FLIGHT- MISDEMEANOR** | 1 | Completed |
| | 03 | **14:108.2** **Resisting a Police Officer with Force or Violence** | 1 | Completed |
| | 04 | **14:34.2** **Battery of a Police Officer** | 1 | Completed |

| SUBJECT | | | |
|---|---|---|---|
| JACKET/SUBJECT TYPE **Adult        Suspect** | NAME (LAST, FIRST, MIDDLE SUFFIX) **Bowman, Aaron Larry Jr** | | |
| DOB **12/17/1974** | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) **1500 3RD ST MONROE, LA 71202** | |
| RACE **Black** | SEX **Male** | HEIGHT or RANGE **5'5   5'5** | WEIGHT or RANGE **198  198** | HAIR **Bald** | EYE **Brown** |
| DL NUMBER/STATE **6798897 / LA** | PRIMARY PHONE **(318)556-4492** | PHONE #2 | PHONE #3 |

| SUBJECT | | | |
|---|---|---|---|
| JACKET/SUBJECT TYPE **Business       Victim** | NAME (LAST, FIRST, MIDDLE SUFFIX) **Society,** | | |
| DOB | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | |
| RACE | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | EYE |
| DL NUMBER/STATE | PRIMARY PHONE | PHONE #2 | PHONE #3 |

| SUBJECT | | | |
|---|---|---|---|
| JACKET/SUBJECT TYPE **Adult        Other** | NAME (LAST, FIRST, MIDDLE SUFFIX) **Criff, Teresa Ann** | | |
| DOB **11/06/1978** | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) **1500 3RD ST MONROE, LA 71202** | |
| RACE **Black** | SEX **Female** | HEIGHT or RANGE **5'4   5'4** | WEIGHT or RANGE **190  190** | HAIR **Brown** | EYE **Brown** |
| DL NUMBER/STATE **007798667 / LA** | PRIMARY PHONE | PHONE #2 | PHONE #3 |

| REPORTING OFFICER **2360 GINN, DONOVAN** | DATE **05/30/2019** | REVIEWED BY **WYLES, CHRISTOPHER     06/03/2019** |
|---|---|---|

OPSO Offense Report 2019-00032327 Page 1 OF 3

# OUACHITA PARISH SHERIFF'S OFFICE
### OFFENSE REPORT

CASE# **2019-00032327**

## VEHICLES as INVOLVED

VEHICLE ROLE
**Suspect Vehicle**

| VEH YR | TYPE/MAKE/MODEL | | STYLE |
|---|---|---|---|
| **2007** | **Lincoln** | **MKX** | |

| PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
|---|---|---|---|
| **ZZH179 / LA** | **2LMDU88C37BJ03862** | **White** | |

ADDITIONAL DESCRIPTIVE INFORMATION
**VYR/2007 VMA/LINC VMO/MKX   VST/LL VCO/WHI**

VEHICLE ROLE

| VEH YR | TYPE/MAKE/MODEL | | STYLE |
|---|---|---|---|
| | | | |

| PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
|---|---|---|---|

ADDITIONAL DESCRIPTIVE INFORMATION

## VEHICLES as PROPERTY

| PROPERTY CODE | | | VALUE |
|---|---|---|---|
| VEH YR | TYPE/MAKE/MODEL | | STYLE |
| PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |

ADDITIONAL DESCRIPTIVE INFORMATION

| PROPERTY CODE | | | VALUE |
|---|---|---|---|
| VEH YR | TYPE/MAKE/MODEL | | STYLE |
| PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |

ADDITIONAL DESCRIPTIVE INFORMATION

| PROPERTY CODE | | | VALUE |
|---|---|---|---|
| VEH YR | TYPE/MAKE/MODEL | | STYLE |
| PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |

ADDITIONAL DESCRIPTIVE INFORMATION

| REPORTING OFFICER | DATE | REVIEWED BY | |
|---|---|---|---|
| **2360 GINN, DONOVAN** | **05/30/2019** | **WYLES, CHRISTOPHER** | **06/03/2019** |

OPSO Offense Report 2019-00032327 Page 2 OF 3

## OUACHITA PARISH SHERIFF'S OFFICE
### OFFENSE REPORT
CASE# 2019-00032327

---

### NARRATIVE

On 5/30/19 I, Deputy D. Ginn observed a white Lincoln MKX (Temp Tag) traveling north on  Marx Street cross the center line with both front and rear driver side tires. I then activated emergency lights and sirens, initiating a traffic stop, Marx Street at Winnsboro Road. The vehicle then traveled across Winnsboro Road and on to South 3rd street, increasing speed, ignoring all visible and audible signals. The vehicle then continued down South 3rd Street, pulling in to 1500 South 3rd Street and finally coming to a complete stop. I then made contact with the driver of the vehicle, Aaron Bowman and advised him to exit the vehicle at which time he refused to comply and began stating he did not do anything wrong. I advised Aaron again to exit the vehicle at which time he complied. I then attempted to secure him handcuffs at which time he pulled away in a violent manner in an attempt to evade arrest. Aaron then attempted climb back in to his vehicle and over to the passenger side at which time I removed him the vehicle and a brief struggle ensued. Aaron then began swinging his arms at me and screaming he did not anything wrong. Aaron then struck me on the top of the head with a closed fist. While attempting to secure Arron in handcuffs he pulled his arms under his body, refusing to give Deputy his wrist. After brief struggle Aaron was secured in handcuffs. I advised Aaron of his rights per Miranda which he stated he understood and chose to waive. Aaron stated he observed the lights and audible sirens but was scared to pull over. He stated just wanted to park his vehicle at his residence incase he went to jail.

Due to Aaron having a laceration to his head, EMS was contacted and arrived on scene a short time later. I then unsecured Aaron to be treated by EMS at which time he was transported to St. Francis hospital. I then made contact with the owner of the vehicle, Teresa Criff who was at 1500 South 3rd Street. I then asked for and was granted verbal consent by Teresa to search her vehicle and its contents which yielded negative results. Due to Aaron not being arrested on scene a warrant was requested for the listed charges. The vehicle was then released to Teresa.

On 6/3/19 I, Deputy D. Ginn obtained an arrest warrant for Aaron. The warrant was approved and signed by Judge Winters with a bond amount set at $4,650. The warrant was secured and later filed with Ouachita Parish Clerk of Court Office. Having no further information show this case closed.

---

| REPORTING OFFICER | DATE | REVIEWED BY | |
|---|---|---|---|
| 2360 GINN, DONOVAN | 05/30/2019 | WYLES, CHRISTOPHER | 06/03/2019 |

OPSO Offense Report 2019-00032327 Page 3 OF 3



**EXECUTIVE DEPARTMENT**

**PROCLAMATION NUMBER 75 JBE 2020**

## *RENEWAL OF STATE OF EMERGENCY FOR COVID-19 EXTENSION OF EMERGENCY PROVISIONS*

**WHEREAS,**   pursuant to the Louisiana Homeland Security and Emergency Assistance and Disaster Act, La. R.S. 29:721, *et seq.*, the Governor declared a public health emergency on in Proclamation Number 25 JBE 2020 in response to the threat posed by COVID-19;

**WHEREAS,**   on March 11, 2020, in Proclamation Number 25 JBE 2020, the Governor declared that a statewide public health emergency existed in the State of Louisiana because of COVID-19 and expressly empowered the Governor's Office of Homeland Security and Emergency Preparedness and the Secretary of the Department of Health and/or the State Health Officer to take all actions authorized under state law;

**WHEREAS,**   when the Governor determines that a state of public health emergency exists, La. R.S. 766(B) empowers the Governor to declare a state of public health emergency by executive order, or proclamation, or both;

**WHEREAS,**   in Proclamation Number 74 JBE 2020, the Governor extended the emergency declaration for the COVID-19 emergency and ordered that Louisiana move into Phase 2 of Resilient Louisiana;

**WHEREAS,**   it is necessary to renew certain other provisions of Proclamation Number 59 JBE 2020; and

**WHEREAS,**   these measures are necessary to protect the health and safety of the people of Louisiana.

**NOW THEREFORE, I, JOHN BEL EDWARDS,** Governor of the State of Louisiana, by virtue of the authority vested by the Constitution and the laws of the State of Louisiana, do hereby order and direct as follows:

**SECTION 1:**   **STATE PROCUREMENT**

**A)**   Pursuant to La. R.S. 29:724(D)(1), suspensions of the Louisiana Procurement Code (La. R.S. 39:1551, *et seq.*) and Louisiana Public Bid Law (La. R.S. 38:2211, *et seq.*) and their corresponding rules and regulations are hereby continued for the purpose of the procurement of any good or services necessary to respond to this emergency.

**B)**   Pursuant to La. R.S. 29:732(A), prices charged or value received for goods and services sold may not exceed the prices ordinarily charged for comparable goods and services in the same market area at or immediately before the time of the state of emergency, unless the price by the seller is attributable to fluctuations in applicable commodity markets, fluctuations in applicable regional or national market trends, or to reasonable expenses and charges and attendant business risk incurred in procuring or selling the goods or services during the state of emergency.

**C)**   In addition to any authority conferred generally herein or by law, the Governor's Office of Homeland Security and Emergency Preparedness, through consultation with the Secretary of the Department of Health, shall continue to have the primary jurisdiction, responsibility and authority for:

1)   Planning and executing public health emergency assessment, mitigation, preparedness response, and recovery for the state;

2)   Coordinating public health emergency response between state and local authorities;

3)   Collaborating with relevant federal government authorities, elected officials of other states, private organizations or companies;

4)   Coordinating recovery operations and mitigation initiatives subsequent to public health emergencies;

5)   Organizing public information activities regarding public health emergency response operations; and

6)   Taking any other measures deemed necessary and proper, as authorized by law.

**D)**   For procurement and contracting, strict compliance with the Louisiana Procurement Code (La. R.S. 39:1551, *et seq.*), Telecommunications Procurement (La. R.S. 39:1751-1755), and Information Technology Procurement (La. R.S. 39:196-200), shall not be required. However, all state agencies should continue to comply with the following conditions:

1)   An appointed official within the agency, or the equivalent for officials in higher education, must determine that the failure to strictly comply with the statutory restriction is necessary due to the emergency.

2)   A centralized point of contact for each agency must monitor all transactions conducted without strict statutory compliance, maintaining copies of all documentation. Documentation should specify whether the purchase falls into the "emergency" or "permanent" category and whether the purchase relates to the COVID-19 event referenced in Proclamation Number 25 JBE 2020 and all documentation must be maintained and available for audit and FEMA reimbursement purposes.

3)   Written competitive quotes and/or offers must be obtained whenever possible and agencies must take the necessary steps to assess that fair and equitable pricing is being offered.

4)   Performance-based contracting should be used where practical.

5)   Statewide contracts should be used where practical.

6)   To the maximum extent possible, such emergency contracts should be only for the duration of the emergency or to allow the agency time to comply with normal competitive bidding requirements if the goods or services will be required for an extended period of time.

7)   Copies of contracts which would otherwise require approval by the Office of State Procurement and the supporting documentation discussed above must be provided to the Office of State Procurement within thirty (30) days or sooner, if practical. Additionally, LaGov agencies should enter small purchases into the LaGov system as soon as practical. The Office of State Procurement shall review the contracts and documentation to determine compliance with this Executive Order.

8)   Payments to contractors should be made only after verification that all goods and services meet contract requirements.

9)   All Public Bid Openings shall be suspended. Bid openings will continue, however public openings will not occur in order to limit the potential for exposure. Bid openings will be made available via phone conference or web conference.

10)   All required Procurement Support Team meetings will be held via phone conference or web conference.

    **E)**    The following provisions of the La. R.S. 39:121, *et seq.*, are hereby suspended:

        1)  The provisions of La. R.S. 39:124-125 regarding periodic meetings and/or inspections of capital outlay projects by facility planning and control, including inspection of a project prior to the expiration of the guarantee period, and any meetings and/or inspections shall be limited to only those inspections or meetings determined to be absolutely necessary for the advancement of the capital outlay project.

        2)  The provisions of La. R.S. 39:126 regarding prior approval of change orders.

## SECTION 2:  PUBLIC EMPLOYEES AND STATE OFFICES

    **A)**    The following travel restrictions will continue to apply to all state employees:

        1)     All state employees traveling on state business out of the United States are hereby directed to cancel or postpone these trips; all employees traveling on official state business out of the State of Louisiana are hereby required to obtain specific authorization from the Commissioner of Administration;

        2)     All state employees intending to travel out of the State of Louisiana for non-official reasons are hereby directed to notify their supervisor and Human Resources Director of the travel as soon as possible, but in no event later than forty-eight (48) hours prior to travel, and immediately upon return to Louisiana;

        3)     All state employees with household members who intend to travel or have traveled internationally are hereby directed to notify their supervisor and Human Resources Director of the travel as soon as possible, but in no event later than forty-eight (48) hours prior to the household member's departure, to state the household member's expected date of return, and to notify their supervisor and Human Resources Director immediately upon the household member's actual return to the United States; and

        4)     All state employees shall notify their supervisor and Human Resources Director if the employee or a household member develops symptoms associated with COVID-19.

    **B)**    The Civil Service Commission and the Division of Administration are hereby directed to continue to maintain a set of guidelines for state employees who are infected with COVID-19 or under quarantine for possible exposure to COVID-19. Such guidelines shall include direction for the management of sick leave by state employees and provide for direction, if possible, for the employee to work remotely. The guidelines developed by the Civil Service Commission and the Division of Administration shall remain in effect by this order.

    **C)**    All state agencies, boards and commissions, and local political subdivisions of the state shall continue to provide for attendance at essential governmental meetings via teleconference or video conference and such attendance shall be allowed during the pendency of this emergency. All efforts shall be made to provide for observation and input by members of the public. Before any meeting conducted pursuant to this section, the state agency, boards and commission, or local political subdivision of the state shall first provide a written certification that it will otherwise be unable to operate due to quorum requirements. Such certification shall be posted at the same time and in the same manner as the agenda for the meeting. Nothing in this order shall be interpreted to waive any notice requirements.

## SECTION 3:  EMERGENCY SUSPENSIONS

    **A)**    All orders allowing for visitation by the parent of a foster child that resides in a home that is quarantined or isolated due to COVID-19 remain suspended. The Department of Children and Family Services is hereby ordered to make all reasonable efforts to continue to allow for alternative visitation.

**B)** SHAREHOLDER MEETINGS

    1)    Subpart A of Part 7 of the Business Corporation Act, including without limitation, Subsection B of Section 1-701, subsection C of 1-702 and subsections A and E of Section 1-705 of the Business Corporation Act, hereby remain suspended to the extent it requires meetings of shareholders to be noticed and held at a physical location in connection with any shareholder meeting that either (a) has a record date that falls during the Public Health emergency declared by Proclamation Number 25 JBE 2020 (or as extended by this subsequent Proclamation); (b) requires notice to be provided in connection therewith during the Public Health emergency declared by Proclamation Number 25 JBE 2020 (or as extended by this subsequent Proclamation); or (c) is scheduled to occur during the Public Health emergency declared by Proclamation Number 25 JBE 2020 (or as extended by this subsequent Proclamation).

    2)    This Proclamation shall remain in full force and effect with respect to any meeting duly called and convened in accordance with the Business Corporation Act and in reliance upon Section 1 hereof, notwithstanding the lapse or termination of this Proclamation.

**C)** NON-PROFIT ORGANIZATIONS

    1)    La. R.S. 12:229(A) and La. R.S. 12:230(A) of the Louisiana Nonprofit Corporation Law, are hereby suspended to the extent it requires meetings of members to be noticed and held at a physical location in connection with any membership meeting that either (a) has a record date that falls during the Public Health emergency declared by Proclamation Number 25 JBE 2020 (or as extended by any subsequent Proclamation); (b) requires notice to be provided in connection therewith during the Public Health emergency declared by Proclamation Number 25 JBE 2020 (or as extended by any subsequent Proclamation); or (c) is scheduled to occur during the Public Health emergency declared by Proclamation Number 25 JBE 2020 (or as extended by any subsequent Proclamation).

    2)    This Proclamation shall remain in full force and effect with respect to any meeting duly called and convened in accordance with the Louisiana Nonprofit Corporation Law and in reliance upon Section 1 hereof, notwithstanding the lapse or termination of this Proclamation.

**D)** To reduce the burden on members of the public and to limit the interactions of individuals with state employees in governmental offices, the following regulatory statutes are hereby suspended as follows:

    1)    Department of Public Safety

        a)    The deadlines for the period to request an administrative hearing pursuant to La. R.S. 15:542.1.3(B)(4) which expired on or after March 9, 2020 but before May 15, 2020 remains suspended and extended until June 26, 2020.

        b)    Further, with regard to Concealed Handgun Permits, the rules related to expiration of permits at LAC 55:1.1307(D) and LAC 55: 1.1309(F) shall continue to be suspended until June 26, 2020.

        c)    The requirement for the renewal of a motor vehicle inspection certificate required under La. R.S. 32:1304 is suspended until June 26, 2020.

        d)    The late fee assessed for firework retail permit applications filed after April 1, 2020, as set forth in La. R.S. 51:656(B), is hereby suspended under December 31, 2020.

        e)    The late fees assessed for failure to timely renew life safety and property protection licenses, as set forth in La. R.S. 40:1664.9(F) and (G), are temporarily suspended through June 26, 2020.

f)      The late fees assessed, as set forth in La. R.S. 40:1484.18(F) and (G), for failure to timely renew licenses issued pursuant to La R.S. 40:1484.1, *et seq.*, shall be waived through December 31, 2020.

2)      Office of Motor Vehicles

a)      Late fees for driver's license which would be charged beginning on March 9, 2020 through June 5, 2020, remain suspended until July 31, 2020.

b)      The three-day period mandated in La. R.S. 32:863.1 to appear at an Office of Motor Vehicle field office for a notice of violation served on or after March 9, 2020 but before May 15, 2020, remains suspended until June 26, 2020.

c)      The expiration date of temporary registration plates issued pursuant to La. R.S. 47:519 and La. R.S. 47:519.2 which expired on or after March 9, 2020 but before June 5, 2020 remains suspended until June 30, 2020.

d)      The expiration date of license plates issued pursuant to La. R.S. 47:462, *et seq.*, which expired on or after March 9, 2020 but before June 5, 2020 remains suspended until July 31, 2020.

e)      The notice of default issued pursuant to La. R.S. 32:429.4 that would be issued on or after March 9, 2020 but before June 5, 2020 remains suspended, and the notices will not be issued until after June 30, 2020.

f)      The expiration date of an apportioned registration issued under the International Registration Plan which expires June 5, 2020 remains suspended and the expiration date remains extended to June 30, 2020.

g)      The period to request an administrative hearing submitted to the Department pursuant to La. R.S. 32:667, La. R.S. 32:863, La. R.S. 863.1 and LAC Title 55, Part III, Chapter 1, §159 which expired on or after March 9, 2020 but before June 5, 2020 remains suspended and extended until June 30, 2020.

h)      The sixty-day delay for the Department to submit the administrative hearing record to the Division of Administrative Law pursuant to La. R.S. 32:667(D)(1) for an arrest which occurred on or after March 9, 2020 but before June 5, 2020 remains extended until August 8, 2020.

i)      Office of Motor Vehicles may continue to offer services by remote customer services agent interaction in current Office of Motor Vehicles office locations.

j)      The expiration date of driver's licenses which expire on or after March 9, 2020, but on or before June 5, 2020, is suspended and the expiration date is extended to July 31, 2020.

k)      The expiration of a temporary driver's license issued pursuant La R.S. 32:667(A) which were issued on or after March 9, 2020 through June 5, 2020 is suspended until July 5, 2020.

l)      Any suspension for which the official notice of withdrawal was issued on or after Feb 17, 2020, but before June 5, 2020, shall remain pending until July 31, 2020.

m)      The expiration date of a hang tag issued pursuant to La. R.S. 47:463.4, *et seq.*, which expired on or after March 9, 2020, but before June 5, 2020, is suspended until July 31, 2020.

n)      For purchasers of used vehicles, purchased from a private individual on or after February 4, 2020 but before June 5, 2020, the 60-day grace period provided for in La. R.S. 32:707(H) for citations for failure to have a current registration and license plate is extended until June 30, 2020.

o)      La. R.S. 32:402.1(F)(2) is hereby suspended through June 15, 2020, to allow for alternative methods of instruction for persons under the age of 18 in the form of remote or distance learning to

be determined by and at the direction of the Office of Motor Vehicles until July 31, 2020.

    p)   La. R.S. 32:431.1(B), which provides that no minor may be issued a driver's license or learner's permit for the operation of a motor vehicle unless, at the time of application, documentation is presented to the department that the minor has received a high school diploma or equivalent diploma, is enrolled and attending school, or enrolled and attending a high school equivalency program, is suspended.

    q)   Penalties and interest due on state and local sales and use taxes collected by the Office of Motor Vehicles which began on or after March 9, 2020 are suspended and are waived until July 1, 2020.

    r)   The expiration of identification cards issued pursuant to La. R.S. 40:1321 which expired on or after March 9, 2020 but before June 5, 2020 is suspended and the expiration date is extended to July 31, 2020.

**E)** There shall remain in effect an exemption from the federal rules and regulations that limit the hours operators of commercial vehicles may drive, specifically, Part 395 (drivers' hours of service) of Title 49 of the Code of Federal Regulations, and any additional appropriate response regarding additional expenditures due to this declaration as determined by the Secretary of the Department of Transportation and Development, or by the Louisiana State Police or local law enforcement agencies for public safety issues in order to ensure the uninterrupted supply of essential goods and commodities.

**F)** Nothing herein shall be construed as an exemption from the Commercial Driver's License requirements in 49 CFR 383, the financial requirements in 49 CFR 387, or applicable federal size and weight limitations.

**G)** The following specific provisions of the Louisiana Revised Statutes of 1950 related to the imposition of fees or charges related to transactions with the Department of Health, or their authorized agent, as qualified by this Order, are hereby suspended for transactions by individuals when, as determined by any guidelines or directions issued by the Secretary, the request is a result of the emergency conditions:

    1)   La. R.S. 40:40(2), to the extent that it requires payment of a fee for production of a duplicate birth record.

    2)   La. R.S. 40:40(3), to the extent that it requires payment of a fee for production of a duplicate death certificate.

**H)** LEGAL AND ADMINISTRATIVE DEADLINES

    1)   Deadlines set forth by law within the following (excluding liberative prescription and peremptive periods applicable to legal proceedings in all courts, administrative agencies, and boards) are hereby suspended until Monday, June 15, 2020:

        a)   Louisiana Civil Code;
        b)   Louisiana Code of Civil Procedure;
        c)   Louisiana Code of Criminal Procedure;
        d)   Louisiana Children's Code;
        e)   Title 9 of Louisiana Revised Statutes, Civil Code Ancillaries;
        f)   Title 13 of Louisiana Revised Statutes, Courts and Judicial Procedure;
        g)   Title 14 of Louisiana Revised Statutes, Criminal Law;
        h)   Title 15 of Louisiana Revised Statutes, Criminal Procedure;
        i)   Title 23 of Louisiana Revised Statutes, Labor and Worker's Compensation;
        j)   Title 32 of Louisiana Revised Statutes, Motor Vehicles and Traffic Regulations;

| | | |
|---|---|---|
| | k) | Title 40 of Louisiana Revised Statutes, Public Health and Safety; |
| | l) | Title 46 of Louisiana Revised Statutes, Public Welfare and Assistance; |
| | m) | Title 47 of Louisiana Revised Statutes, Revenue and Taxation; |
| | n) | Title 49 of Louisiana Revised Statutes, State Administration; and |
| | o) | Title 56 of Louisiana Revised Statutes, Wildlife and Fisheries. |

2) In addition, all other deadlines in legal proceedings in all courts, administrative agencies, and boards shall remain suspended until Monday, June 15th.

3) The suspension of deadlines in Title 18 from order Proclamation Number 59 JBE 2020 is terminated.

4) Liberative prescriptive and preemptive periods applicable to legal proceedings in all courts, administrative agencies, and boards are suspended through July 5, 2020.

5) Courts, administrative agencies and boards statewide shall continue to use due diligence in communicating with attorneys, parties to proceedings with pending deadlines, and the public how the court, agency or board will implement and interpret the provisions of this Order.

6) Paragraph 2 of this Subsection shall not be interpreted so as to prohibit an owner of immovable property from reclaiming leased property if abandoned as provided by law, or entering leased property to make necessary repairs as provided by law.

I) Any state department or agency or political subdivision is hereby granted authority to further extend any non-essential deadline for a period of no longer than 30 days if deemed necessary to respond to the threat of COVID-19.

**SECTION 4:   DEPARTMENT OF EDUCATION**

A) All public schools in the State of Louisiana shall close facilities to students for the duration of the 2019-2020 academic calendar year. All school districts shall ensure the provision of meals or other essential items to eligible students, provided that appropriate social distancing measures are in place for each school district in the state. All school districts shall provide or ensure the provision of remote or distance learning as defined by the Board of Elementary and Secondary Education and the Department of Education. The 63,720 instructional minute requirement per year shall remain suspended to the extent that full compliance cannot be achieved in light of the COVID-19 pandemic. All school districts shall ensure compliance with all applicable federal and state laws, regulations and standards for the provision of education to all students, including the provision of a free and appropriate public education for all children with disabilities and the provision of services for English Learners (ELS). To ensure compliance with federal statutes and regulations, school districts are encouraged to view guidance from the U.S. Department of Education regarding compliance in response to COVID-19. The Board of Elementary and Secondary Education shall report to the Governor and the Legislature any further actions necessary to ensure that eligible students achieve successful student grading, promotion, and graduation. The Department of Education shall ensure compliance with all applicable federal and state laws, regulations, and standards in its function as the state education agency of Louisiana, including the monitoring of school districts in their provision of a free and appropriate public education to students with disabilities, and the collection and public reporting of student data.

B) The provisions of La. R.S. 17:24.4 and BESE Bulletin 741 that mandate annual administration of testing under the Louisiana Education Assessment Program and End of Course examinations hereby remain suspended for the entirety of the 2019-2020 school year contingent upon receipt of a waiver of the accountability mandates in the Every Student Succeeds Act from the United States Department of Education.

**C)**   The provisions of La. R.S. 17:4023 and La. R.S. 47:6301(B)(2)(ii) that require nonpublic schools to administer testing under the Louisiana Education Assessment Program and End of Course examinations to students participating in the Louisiana Student Scholarships for Educational Excellence program and to students receiving scholarships from donations to school tuition organizations hereby remain suspended for the entirety of the 2019-2020 school year upon receipt of a waiver of the accountability mandates in the Every Student Succeeds Act from the United States Department of Education.

**D)**   The provisions of La. R.S. 17:10.1 that provide for the School and District Accountability System and any rules or regulations adopted by the Board of Elementary and Secondary Education pertaining to the School and District Accountability System hereby remain suspended for the 2019-2020 school year upon receipt of a waiver of the accountability mandates in the Every Student Succeeds Act from the United States Department of Education.

**E)**   The provisions of La. R.S. 17:391.2, *et seq.*, that provide for public school accountability and assessment hereby remain suspended for the entirety of the 2019-2020 school year upon receipt of a waiver of the accountability mandates in the Every Student Succeeds Act from the United States Department of Education.

**F)**   The provisions of La. R.S. 17:154.3 that require teachers to work a minimum number of days per school year hereby remain suspended for the entirety of the 2019-2020 school year.

**G)**   The provisions of La. R.S. 17:221 that mandate every person having control or charge of a child to send that child to a public or nonpublic school hereby remain suspended for the entirety of the 2019-2020 school year.

**H)**   The provisions of La. R.S. 17:232 that require attendance to be checked daily at all schools hereby remain waived for the entirety of the 2019-2020 school year.

**I)**   The provisions of La. R.S. 17:3881, *et seq.*, La. R.S. 17:3901, *et seq.*, and La. R.S. 17:3997(D) that provide for the use of value-added data in teacher evaluation and as criteria for receipt of teaching credentials hereby remain suspended for the entirety of the 2019-2020 school year upon receipt of a waiver of the accountability mandates in the Every Student Succeeds Act from the United States Department of Education.

**J)**   The provisions of La. R.S. 17:3991(C)(1)(b) that require charter schools to adhere to certain student application and enrollment procedures hereby remain suspended for the entirety of the 2019-2020 school year.

**K)**   The provisions of 17:183.2(B) and (C) that require students graduating in Spring 2020 to complete the Individualized Education Program (IEP) goals and requirements for the purposes of graduation remain suspended for the entirety of the 2019-2020 school year.

**L)**   The provisions of 17:183.3(D) and (E) that require students graduating in Spring 2020 to complete the IEP goals and requirements for the purposes of graduation remain suspended for the entirety of the 2019-2020 school year.

**M)**   The provisions of 17:183.3(B)(2)(f) remain suspended to allow eligible twelfth grade students to graduate in Spring 2020 with less than 9 credit units if the students were enrolled in a course within the Jump Start sequence in Spring 2020.

**N)**   The Board of Elementary and Secondary Education shall maintain emergency rules as necessary to effect the suspension of the statutes described in the sections above.

**SECTION 5:**   **HIGHER EDUCATION**

    **A)**    All Public Post-secondary institutions and proprietary schools within the State of Louisiana that are licensed by the Louisiana Board of Regents shall continue to be allowed to substitute in-person clinical and classroom instruction with online and lab simulations for enrolled students for the duration of the declared emergency.

        Further, all proprietary schools within the State of Louisiana that are licensed by the Louisiana Board of Regents shall continue to be allowed to substitute in-person clinical and classroom instruction with online and lab simulations for currently enrolled students as of March 1, 2020.

    **B)**    Relative to the initial eligibility requirements for a Taylor Opportunity Program for Students Award, for students who were enrolled in a Louisiana public high school; students who were enrolled in a nonpublic high school in Louisiana having the approval of the State Board of Elementary and Secondary Education; students who resided in the State of Louisiana and were enrolled in a home study program approved by the State Board of Elementary and Secondary Education; and students who resided out of state during the 2020 academic year but who meet the residency requirements to qualify for a TOPS award provided for in La. R.S. 17:5023, the following requirements shall be suspended:

        1)    The ACT deadlines imposed by La. R.S. 17:5062, including the requirement that a student be assessed a one semester penalty as set forth in La. R.S. 17:5062 for failure to achieve a qualifying score no later than the national ACT test date of the year of high school graduation.

        2)    The home study requirements set forth in La. R.S. 17:5029(B)(1)(b)(i).

        3)    The TOPS Tech core curriculum requirement that a student earn at least nine credits in Jump Start course sequences, workplace experiences, and credentials as set forth in La. R.S. 17:5026 when such requirement has been suspended for the purpose of meeting high school graduation requirements.

    **C)**    Relative to continuing eligibility requirements for a Taylor Opportunity Program for Students Award, for students who were enrolled full time as of the census date in a postsecondary institution in Louisiana and remained enrolled as of March 13, 2020; students who were enrolled full time at an out of state college or university as of the census date and remained enrolled through March 13, 2020; students who were enrolled full time as of the census date and who were studying abroad and were required to return to Louisiana due to the outbreak of COVID-19 in the country in which the students were studying; and students who were scheduled to be enrolled full time at a school operating on a basis other than semesters during the spring of 2020; the following requirements shall be suspended:

        1)    The steady academic progress requirements imposed by La. R.S. 17:5041 or La. R.S. 17:5042.

        2)    The minimum grade point average requirements imposed by La. R.S. 17:5041 or La. R.S. 17:5042.

        3)    The deadlines imposed by La. R.S. 17:5041 or La. R.S. 17:5042 requiring that a student whose award is suspended for failure to meet the grade point average requirements must bring his grade point average up to that required in the applicable statute within a specified time period.

**SECTION 6:**   **HEALTH CARE REGULATIONS**

    **A)**    Louisiana state licensure laws, rules, and regulations for medical professionals and personnel hereby remain suspended for those medical professionals and personnel from other states or other countries offering medical services in Louisiana to those needing medical services as a result of this disaster provided that said out-of-state or out-of-country medical professionals and personnel possess a current medical license in good standing in their respective state or

country of licensure and that they practice in good faith and within the reasonable scope of his or her skills, training, or ability.

**B)**   All out-of-state or out-of-country medical professionals and personnel offering services in the State of Louisiana by authority of this Order shall continue to submit to the State Health Officer, or his designee at the Office of Public Health within the Louisiana Department of Health, a copy of their respective professional license and photo identification, together with any other forms or documents the State Health Officer may require, by contacting the Office of Public Health.

**C)**   Because of the threat posed to health care workers from COVID-19 and the need to allocate resources to respond to this disaster, there is a need to continue to allow for additional telehealth opportunities. To facilitate the provision of telehealth services where available and appropriate, the following guidelines remain in place:

   1)   The requirement of La. R.S. 40:1223.4 that each state agency or professional or occupational licensing board or commission that regulates the practice of a healthcare provider promulgate any rules necessary to provide for, promote, and regulate the use of telehealth in the delivery of healthcare services within the scope of practice regulated by the licensing entity hereby remains suspended during the term of this emergency declaration.

   2)   All licensing boards are encouraged to maintain emergency rules, if necessary, so that it will not be considered unethical nor a violation of any licensing standards of the healthcare provider, solely as a result of the provision of such care via telehealth.

   3)   The practice of the healthcare provider administered via telehealth must be within the scope of the provider's license, skill, training and experience. The services provided to the patient must meet the standard of care that would be provided if the patient were treated on an in-person basis.

   4)   Prescribing of any controlled substances via telehealth must be medically appropriate, well-documented and continue to conform to rules applicable to the prescription of such medications.

**D)**   The ambulance staffing requirements set forth in La. R.S. 40:1135.1(A)(2)(a) hereby remain temporarily suspended as to ambulance drivers, provided that such driver possesses a driver's license valid in the State of Louisiana and meets the criminal background check requirements of La. R.S. 40:1203.1, *et seq.*

Except as expressly suspended herein, all other requirements of La. R.S. 40:1135.1 shall remain in place, including the requirement that an ambulance be staffed with a minimum of two persons, one of whom shall be a licensed emergency medical technician.

**E)**   The licensing and certification requirements for Louisiana Clinical Laboratory Personnel set forth in La. R.S. 37:1318, including any requirements for criminal background checks, be temporarily suspended for those laboratory personnel conducting COVID-19 testing who demonstrate molecular biology polymerase chain reaction (PCR) experience and/or for those who demonstrate serological experience in testing clinical samples, when such testing and related activities are performed under the oversight and responsibility of a licensed physician or doctor of philosophy (Ph.D.) with demonstrated experience in the related laboratory activities who ensures the quality of results.

**F)**   The requirement for supervision of physician assistants pursuant to La. R.S. 37:1360.28 is temporarily suspended, however a physician assistant shall practice within his/her scope of practice, subject to his/her education, knowledge, skills, and ability.

**G)**   The Louisiana Board of Dentistry is granted the authority to issue licenses based upon a 2020 graduation from any CODA accredited program for those who apply and complete their applications in 2020.

**H)**   The licensing and certification requirements for the Louisiana State Board of Chiropractic Examiners set forth in La. R.S. 37:2805(C), which states that the Board shall notify each applicant of acceptance or rejection of application not less than 30 days prior to the National Board of Chiropractic Examiners examination, are temporarily suspended.

**I)**   The collaborative practice agreement requirements of the Louisiana State Board of Medical Examiners and the Louisiana State Board of Nursing for advanced practice registered nurses, including certified nurse midwives, certified registered anesthetists, clinical nurse specialists, and nurse practitioners, are suspended for this public health emergency.

**J)**   The requirements that a certified registered nurse anesthetist provide anesthesia care under the direction and supervision of a physician or dentist licensed to practice in Louisiana as set forth in La. R.S. 37:930(A)(3) and (F) are temporarily suspended, provided that the certified registered nurse anesthetist is within his/her scope of practice and has the education, knowledge, skills, and ability to provide such anesthesia care and ancillary services without supervision or direction.

**K)**   The penalties set forth for practicing nursing without a duly issued registered nurse license in the state of Louisiana set forth in La. R.S. 37:925(A)(3) and (4) are temporarily suspended, so long as the individual has an active, unrestricted, unencumbered license to practice registered nursing in any U.S. state, territory, or district, and the individual has no charges pending against his/her license and the individual is not enrolled in an alternative to discipline program.

**L)**   Relative to the authority of a registered nurse to administer anesthetic agents in certain settings in La. R.S. 37:935, the Louisiana State Board of Nursing shall provide by emergency rule that, for the purpose of providing care during the COVID-19 pandemic, "critical care settings" shall include all healthcare settings in which anesthetic agents have to be administered to intubated patients.

**M)**   The penalties set forth for practicing practical nursing without a duly issued license in the state of Louisiana set forth in La. R.S. 37:978(A)(3) and (4) are temporarily suspended, so long as the individual is licensed to practice practical nursing in any U.S. state, territory or district.

**N)**   The requirements for the State Board of Social Work Examiners to issue a social worker certificate set forth in La. R.S. 37:2724(B), specifically the requirement that Certified Social Workers pass an examination within a specific time frame, are temporarily suspended.

**O)**   The requirement that all licensed home health agencies admit patients for skilled care only on the order of a physician set forth in La. R.S. 40:2116.34(A)(1) is temporarily suspended to permit physician assistants, advanced practice registered nurses, certified nurse practitioners, clinical nurse specialists, and certified nurse midwives to order home health services.

**P)**   The requirement that the clinical dental licensing examination include procedures performed on human subjects as set forth in La. R.S. 37:761(C) is hereby temporarily suspended, for those 2020 graduates of any CODA accredited dental school who have applied and otherwise completed their licensing applications with the Louisiana State Board of Dentistry in 2020.

**Q)**   The requirement that all clinical dental hygiene licensing examinations include procedures performed on human subjects as set forth in La. R.S. 37:764(D), is hereby temporarily suspended, for those 2020 graduates of the LSU dental hygiene program, as well as for any other 2020 graduates of any other dental

hygiene program in Louisiana that is accredited by the Commission on Dental Accreditation ("CODA"), who have applied and otherwise completed their licensing applications with the Louisiana State Board of Dentistry in 2020.

R)  The requirement that an out-of-state registered nurse or an out-of-state advanced practice registered nurse (including an out-of-state certified nurse midwife, a certified registered nurse anesthetist, a clinical nurse specialist, and a nurse practitioner) obtain a license to practice registered nursing or advanced practice registered nursing in Louisiana as set forth in La. R.S. 37:920, is temporarily suspended provided that such person has an active, unencumbered, unrestricted license to practice registered nursing or advanced practice registered nursing from any U.S. state, territory, or district, which has been confirmed through the NURSYS System.

S)  An individual physician who holds a full, unlimited and unrestricted license to practice medicine in another U.S. state, territory, or district and who has unrestricted hospital credentials and privileges in any U.S. state, territory, or district, may practice medicine at a hospital that is licensed by the Louisiana Department of Health upon the following terms and conditions being met:

   1)  The licensed Louisiana hospital shall verify all physicians' credentials and privileges;
   2)  The licensed Louisiana hospital shall keep a list of all physicians coming to practice at the hospital and shall provide this list to the Louisiana State Board of Medical Examiners within ten (10) days of each physician starting practice at the licensed Louisiana hospital; and
   3)  The licensed Louisiana hospital shall also provide written notice to the Louisiana State Board of Medical Examiners as of the date that the physician stopped practicing medicine in Louisiana at that hospital; such written notification shall be made within ten (10) days of the physician's cessation of practice of medicine at that Louisiana hospital.

T)  An individual physician's assistant who holds a full, unlimited and unrestricted license to practice in another U.S. state, territory, or district and who has unrestricted hospital credentials and privileges in any U.S. state, territory, or district, may practice at a hospital that is licensed by the Louisiana Department of Health upon the following terms and conditions being met:

   1)  The licensed Louisiana hospital shall verify all physician's assistants' credentials and privileges;
   2)  The licensed Louisiana hospital shall keep a list of all physician's assistants coming to practice at the hospital and shall provide this list to the Louisiana State Board of Medical Examiners within ten (10) days of each physician assistant starting practice at the licensed Louisiana hospital; and
   3)  The licensed Louisiana hospital shall also provide written notice to the Louisiana State Board of Medical Examiners as of the date that the physician assistant stopped practicing in Louisiana at that hospital; such written notification shall be made within ten (10) days of the physician's assistant's cessation of practice at that Louisiana hospital.

U)  An individual respiratory therapist who holds a full, unlimited and unrestricted license to practice in another U.S. state, territory, or district and who has unrestricted hospital credentials in any U.S. state, territory, or district, may practice at a hospital that is licensed by the Louisiana Department of Health upon the following terms and conditions being met:

   1)  The licensed Louisiana hospital shall verify all respiratory therapists' credentials and shall issue a scope of hospital practice for each respiratory therapist;
   2)  The licensed Louisiana hospital shall keep a list of all respiratory therapists coming to practice at the hospital and shall provide this list to

the Louisiana State Board of Medical Examiners within ten (10) days of each respiratory therapist starting practice at the licensed Louisiana hospital; and

3)    The licensed Louisiana hospital shall also provide written notice to the Louisiana State Board of Medical Examiners as of the date that the respiratory therapist stopped practicing in Louisiana at that hospital; such written notification shall be made within ten (10) days of the respiratory therapist's cessation of practice of medicine at that Louisiana hospital.

V)    An individual advanced practice registered nurse (including a certified nurse midwife, a certified registered nurse anesthetist, a clinical nurse specialist, and a nurse practitioner) who holds an active, unencumbered, and unrestricted license to practice advanced practice registered nursing in another U.S. state, territory, or district as confirmed through the NURSYS System, and who has unrestricted hospital credentials and privileges in any U.S. state, territory, or district, may practice nursing at a hospital that is licensed by the Louisiana Department of Health upon the following terms and conditions being met:

1)    The licensed Louisiana hospital shall verify all the advanced practice registered nurses' credentials and privileges;

2)    The licensed Louisiana hospital shall keep a list of all advanced practice registered nurses coming to practice at the hospital and shall provide this list to the Louisiana State Board of Nursing within ten (10) days of each advanced practice registered nurse starting practice at the licensed Louisiana hospital; and

3)    The licensed Louisiana hospital shall also provide written notice to the Louisiana State Board of Nursing as of the date that the advanced practice registered nurse stopped practicing nursing in Louisiana at that hospital; such written notification shall be made within ten (10) days of the advanced practice registered nurse's cessation of practice of nursing at that Louisiana hospital.

W)    The requirement that there be a quorum of a healthcare professional licensing board or authority for decision-making as set forth in La. R.S. 42:13 and the respective board statutes, is temporarily suspended to allow the Executive Director of that healthcare professional licensing board to temporarily suspend, waive, or amend a board rule or regulation that would prohibit, limit, or interfere with the licensing of healthcare professionals that are necessary to address the declared public health emergency.

X)    No healthcare professional licensing board shall issue an adverse action or penalty against an individual applicant or licensee under the jurisdiction of that board for the failure of that applicant or licensee for failure to comply with a procedural licensing requirement during the declared public health emergency, provided that the individual applicant or licensee made a good faith attempt to comply with the procedural requirements of the licensing board.

**SECTION 7:    PROVISIONS FOR FIRST RESPONDERS**

A)    FIRST-RESPONDER RULEMAKING

1)    In an effort to preserve the health and safety of the first responders, specifically the firefighters and police officers subject to the Municipal Fire and Police Civil Service System, all local Municipal Fire and Police Civil Service Boards are to maintain emergency rules providing for special COVID-19 leave rules.

2)    In order to quickly achieve these rule adoptions, the 30-day notice requirements for rule adoptions found in R.S. 33:2478 and R.S. 33:2538 hereby remain suspended during the pendency of the declaration of public health emergency.

3)   Municipal Fire and Police Civil Service Boards shall post notice of the proposed emergency rule with the 24-hour public meeting notice provided in R.S. 42:19.

4)   Due to the Stay at Home Order in place statewide, all Municipal Fire and Police Civil Service Boards shall conduct meetings by teleconference or video conference.

**B)   LAW ENFORCEMENT REHIRING**

1)   The limitation on receipt of full retirement benefits by rehired retirees assigned to road patrol or corrections function only, under La. R.S. 11:2175(E) shall remain suspended for the duration of this emergency. Any sheriff may rehire on a full-time basis any otherwise qualified retirees to road patrol or corrections functions only, without loss or suspension of retirement benefits to those rehired deputies, for the duration of the emergency.

2)   The Boards of Trustees of the Louisiana Sheriffs Pension and Relief Fund shall not be required to suspend benefits to retirees rehired as full-time employees covered by this proclamation.

**SECTION 8:   FUNERAL SERVICES**

**A)**   Indoor funeral services shall be limited to the same number of attendees as required by Proclamation Number 74 JBE 2020. Outdoor services may be held pursuant to the May 1 guidance from the State Fire Marshal for outdoor religious services. Funeral directors are directed to limit the number of personnel present at any such service to only one single funeral director and to ensure the enforcement of the CDC's social distancing guidelines during the conduct of the funeral.

**B)**   In order to facilitate the timely handling and interment or cremation of deceased in this State, funeral directors shall be considered "essential workers" for the purposes of obtaining access to personal protective equipment ("PPEs") and for the purposes of conducting the necessary business of death care in the State.

**C)**   The Department of Health is hereby directed to publish guidance that funerals for COVID-19 positive decedents be conducted, as recommended by the CDC, within five days, if practical.

**D)**   In order to facilitate the timely cremation of remains pursuant to the express wishes of the deceased or of those authorized to direct disposition under La. R.S. 8:655 (whichever is applicable under the law), the signatures and notarization required for cremation authorizations under La. R.S. 37:876-877 are hereby waived inasmuch as they can be replaced by faxed, scanned, or photographed signatures on the requisite paperwork and video conferencing without the need for a notary. In no event shall this waiver be interpreted as an authorization to proceed with cremation in the absence of the signatures of those required by La. R.S. 37:876-877 or against the express wishes of those individuals identified by La. R.S. 8:655.

**E)**   To the extent necessary and as permitted by the orders of the Louisiana Supreme Court issued on March 16, 2020, and March 20, 2020, the district courts of this State shall consider petitions brought pursuant to La. R.S. 8:655(E) by funeral directors, hospitals, or coroners during the term of this proclamation as essential proceedings necessary to respond to the COVID-19 event.

**F)**   In no event shall this proclamation be interpreted to waive any other provisions of Title 8 or Chapter 10 of Title 37 of the Louisiana Revised Statutes that are not expressly identified herein.

**SECTION 9:    UNEMPLOYMENT COMPENSATION**

**A)**     For the purpose of this proclamation, "emergency-related claims" shall mean claims for unemployment compensation filed by persons whose unemployment is directly due to the impact of COVID-19 or due to their inability to get to their job or worksite because they are sick, isolated or quarantined, caring for a sick family member, or when an employees' child's school is closed as determined by the administrator of the state's unemployment compensation program, i.e., the Secretary of the Louisiana Workforce Commission. Emergency-related claims will not necessarily include all claims in all parishes included in COVID-19 proclamations, declarations or orders.

**B)**     The following statutes relating to unemployment insurance are hereby further suspended to the extent and in the manner described below:

1)     La. R.S. 23:1533, which provides for claimants' benefits to be charged against base period employers for purposes of employers' tax experience rating and the protesting of such charges by employers, shall be suspended for emergency-related claims made during the effective period of this Proclamation.

2)     La. R.S. 23:1552, which provides for the charging of claimants' benefits to certain employers, shall be suspended for emergency-related claims made during the effective period of this Proclamation.

3)     La. R.S. 23:1600(2) and (3) shall be suspended while this Proclamation is in effect for emergency-related claims to the extent that they require claimants to register and search for work, but the requirements in La. R.S. 23:1600(2) that claimants continue to report at an employment office in the manner prescribed by the administrator, and in La. R.S. 23:1600(3) that claimants be able to work and be available for work, are not waived. The requirement to continue to report at an employment office, which is accomplished through either an automated telephone system or the Internet, is not impractical and avoids overpayments, which claimants would be liable to repay. Such activities are not practical by an individual who is impacted by COVID-19.

4)     La. R.S. 23:1600(4) shall be suspended while this Proclamation is in effect for emergency-related claims to the extent that claimants are required to wait a period of one week before receiving benefits.

5)     La. R.S. 23:1601(1) and (2), which provide certain disqualifications for otherwise eligible claimants. Such disqualifications include reasons for separation from employment, including a substantial change in employment by the employer or intentional misconduct connected with employment by the claimant. Separations that are the direct result of the impact caused by COVID-19 are not the fault of either the employer or the claimant. Administration of these separation issues with regard to such claims places an unnecessary burden on the state's unemployment system. Otherwise eligible claimants shall not be disqualified based on R.S. 23:1601(1) or (2).

6)  La. R.S. 23:1123, which authorizes the Assistant Secretary in a Workers' Compensation case to schedule a medical examination when there is a dispute as to the capacity to work shall be suspended during the effective period of this Proclamation. Any examination scheduled pursuant to this provision prior to the effective date of the Proclamation shall be null and void and shall be rescheduled with notice reissued to the party in accordance with existing statutory requirements.

7) La. R.S. 23:1124, which suspends an employee's right to Workers' Compensation benefits for failure to timely submit to a medical examination shall be suspended during the effective period of this Proclamation.

8) La. R.S. 23:1201.1 relative to the right to request a hearing for the suspension or termination of benefits for failure to attend a medical appointment shall be suspended during the effective period of this Proclamation.
  9)

**C)**   Pursuant to 29 CFR Part 826.30, the following employees of the State of Louisiana are excluded from receiving paid sick leave under "The Emergency Paid Sick Leave Act" or expanded family and medical leave under "The Emergency Family and Medical Leave Expansion Act". For purposes herein, the state employees excluded from these provisions include:

1) Healthcare providers, defined as any employee of the State of Louisiana employed at a hospital, veterans' home, health care center, clinic, local health department or agency, or any facility that performs laboratory or medical testing, as well as those employees who work in such facilities whose work is necessary to maintain the operation of the facility; and

2) Emergency responders, defined as any employee of the State of Louisiana necessary for the provision of transport, care, healthcare, comfort and nutrition of such patients, or others needed for the response to COVID-19. This includes, but is not limited to military or national guard personnel, law enforcement officers, correctional institution personnel, fire fighters, emergency medical services personnel, physicians, nurses, public health personnel, emergency medical technicians, paramedics and emergency management personnel, as well as those employees who work in such facilities whose work is necessary to maintain the operation of the facility.

**SECTION 10:**   The Governor's Office of Homeland Security and Emergency Preparedness and the State Fire Marshal are directed to ensure compliance with this order, and is empowered to exercise all authorities pursuant to La. R.S. 29:721, *et seq.*, and La. R.S. 29:760, *et seq.*

**SECTION 11:**   All departments, commissions, boards, agencies and officers of the state, or any political subdivision thereof, are authorized and directed to cooperate in actions the state may take in response to the effects of this event.

**SECTION 12:**   Unless otherwise provided in this order, these provisions are effective from Friday, June 5, 2020 to June 26, 2020, or as extended by any subsequent Proclamation, unless terminated sooner.

IN WITNESS WHEREOF, I have set my hand officially and caused to be affixed the Great Seal of Louisiana in the City of Baton Rouge, on this 4th day of June, 2020.

GOVERNOR OF LOUISIANA

**ENROLLED**

2020 Regular Session

# ACT No. 162

HOUSE BILL NO. 805

BY REPRESENTATIVE PRESSLY

1                                                    AN ACT

2      To enact Part VI of Chapter 1 of Code Title XXIV of Code Book III of Title 9 of the

3              Louisiana Revised Statutes of 1950, to be comprised of R.S. 9:5828 through 5830,

4              relative to the effect of obligations during certain emergencies and disasters; to

5              provide relative to suspension of prescription, peremptive, and abandonment periods

6              and other legal deadlines; to provide relative to the extension of prescription and

7              peremptive periods and other legal deadlines; to provide relative to the ratification

8              of Proclamation Number JBE 2020-30; to provide for applicability; and to provide

9              for related matters.

10     Be it enacted by the Legislature of Louisiana:

11             Section 1.  Part VI of Chapter 1 of Code Title XXIV of Code Book III of Title 9 of

12     the Louisiana Revised Statutes of 1950, to be comprised of R.S. 9:5828 through 5830, is

13     hereby enacted to read as follows:

14             PART VI.  SUSPENSION OR EXTENSION OF PRESCRIPTION AND

15     PEREMPTION DURING 2020 COVID-19 PUBLIC HEALTH EMERGENCY

16             §5828.  Purpose; ratification

17                     A.  The legislature finds that the COVID-19 public health emergency created

18             a statewide emergency disrupting and forcing the closure of certain courts and public

19             offices and further resulting in the displacement of courts, offices, clients, and

20             counsel.  This Part is enacted for the benefit and protection of the state as a whole

21             and its citizens, and to prevent injustice, inequity, and undue hardship to persons who

22             were prevented by the COVID-19 public health emergency from timely access to

23             courts and offices in the exercise of their legal rights, including the filing of

CODING:  Words in ~~struck through~~ type are deletions from existing law; words underscored are additions.

HB NO. 805                                                    **ENROLLED**

1    documents and pleadings as authorized or required by law.  Therefore, this Part shall

2    be liberally construed to effect its purposes.

3         B.  The action of the governor of this state in issuing Proclamation Number

4    JBE 2020-30 and any extensions thereof are hereby approved, ratified, and

5    confirmed subject to the provisions of this Part.

6    §5829.  Suspension and extension of prescription and peremption; exceptions

7         A.  All prescriptions, including liberative, acquisitive, and the prescription

8    of nonuse, abandonment periods, and all peremptive periods shall be subject to a

9    limited suspension or extension during the time period of March 17, 2020, through

10   July 5, 2020; however, the suspension or extension of these periods shall be limited

11   and shall apply only if these periods would have otherwise expired during the time

12   period of March 17, 2020, through July 5, 2020. The right to file a pleading or

13   motion to enforce any right, claim, or action which would have expired during the

14   time period of March 17, 2020, through July 5, 2020, shall expire on July 6, 2020.

15        B.  The provisions of Subsection A of this Section shall not apply to any

16   matter concerning the prescription of nonuse applicable to mineral servitudes,

17   mineral royalty interests, and executive rights which shall be governed by the

18   Louisiana Mineral Code and are not subject to the suspension provisions in this

19   Section.

20   §5830. Suspension of legal deadlines; extension of legal deadlines; contradictory

21        hearing

22        A.  All deadlines in legal proceedings that were suspended by Proclamation

23   Number JBE 2020-30 and any extensions thereof shall be subject to a limited

24   suspension or extension until July 6, 2020; however, the suspension or extension of

25   these deadlines shall be limited and shall apply only if these deadlines would have

26   otherwise expired during the time period of March 17, 2020, through July 5, 2020.

27   The right to file a pleading or motion to enforce any deadline in legal proceedings

28   which would have expired during the time period of March 17, 2020, through July

29   5, 2020, shall expire on July 6, 2020.

Page 2 of 4

CODING:  Words in ~~struck through~~ type are deletions from existing law; words <u>underscored</u> are additions.

HB NO. 805                                                               **ENROLLED**

1          B.  Notwithstanding the provisions of Subsection A of this Section and to the

2    extent that deadlines in legal proceedings were not suspended by Proclamation

3    Number JBE 2020-30 and any extensions thereof, if a deadline in a legal proceeding

4    lapsed during the time period of March 17, 2020, through July 5, 2020, a party shall

5    have the right to seek an extension or suspension of that deadline by contradictory

6    motion or declaratory judgment.  The party seeking the extension shall bear the

7    burden of proving that either the party or his attorney was adversely affected by the

8    COVID-19 public health emergency and, but for the adverse effects of the COVID-

9    19 public health emergency, the legal deadline would have been timely met.  For

10   good cause shown, the court shall extend the deadline in the legal proceeding, but in

11   no instance shall the extension be later than September 1, 2020.

12          C.  Notwithstanding Subsections A and B of this Section, legal deadlines

13   related to matters set forth in Louisiana Civil Code Book III, Title IX, Chapters 1

14   through 5 and Louisiana Code of Civil Procedure Book VII, Title XI, Chapters 1 and

15   2 shall not be suspended or extended beyond the time period provided for by

16   Proclamation Number JBE 2020-30 and any extensions thereof.

17          Section 2.  The provisions of this Act shall preempt and supersede but not repeal any

18   provision of the Civil Code or any other provision of law to the extent that such provision

19   conflicts with the provisions of this Act.

20          Section 3.  This Act is declared to be interpretative, curative, and procedural and

21   therefore is to be applied retroactively as well as prospectively.

22          Section 4.  The Louisiana State Law Institute shall include as notes to this Act

23   Proclamation Number JBE 2020-30 and any extensions thereof.

24          Section 5.  The provisions of R.S. 9:5829 and 5830 as enacted by this Act shall

25   specifically apply in all administrative hearings and proceedings.

26          Section 6.  This Act shall become effective upon signature by the governor or, if not

27   signed by the governor, upon expiration of the time for bills to become law without signature

28   by the governor, as provided by Article III, Section 18 of the Constitution of Louisiana.  If

CODING:  Words in ~~struck through~~ type are deletions from existing law; words underscored
are additions.

HB NO. 805                                                          **ENROLLED**

1    vetoed by the governor and subsequently approved by the legislature, this Act shall become

2    effective on the day following such approval.


                                 _____

                                 SPEAKER OF THE HOUSE OF REPRESENTATIVES


                                 _____

                                 PRESIDENT OF THE SENATE


                                 _____

                                 GOVERNOR OF THE STATE OF LOUISIANA


APPROVED: _____


Page 4 of 4

CODING:  Words in ~~struck through~~ type are deletions from existing law; words <u>underscored</u>
are additions.

**ENROLLED**

2020 First Extraordinary Session

# ACT No. 3

HOUSE BILL NO. 5

BY REPRESENTATIVE MARINO

1              AN ACT

2 To enact Civil Code Article 3472.1 and Code of Civil Procedure Article 562, relative to civil

3           proceedings; to provide relative to declaration of emergencies or disasters; to provide

4           relative to suspension of prescription and peremption periods and other legal

5           deadlines; to provide relative to the suspension of abandonment; to provide for

6           cessation of suspension; and to provide for related matters.

7 Be it enacted by the Legislature of Louisiana:

8           Section 1.  Civil Code Article 3472.1 is hereby enacted to read as follows:

9           Art. 3472.1.  Emergency suspension of prescription and peremption

10                A.  Notwithstanding any other provisions of the law, in the event the

11           governor declares a state of emergency or disaster pursuant to R.S. 29:721 through

12           772, the Supreme Court of Louisiana may enter an order or series of orders as

13           deemed necessary and appropriate to suspend all prescriptive and peremptive periods

14           for a period of time not to exceed ninety days.  Thereafter, should the need for

15           continuing suspension be necessary to preserve access to the courts, the governor

16           may issue executive orders as deemed appropriate.  The period of suspension

17           authorized by the provisions of this Article shall terminate upon the earlier of an

18           order of the Supreme Court of Louisiana or upon termination of the declared state

19           of disaster or emergency. Nothing in this Article limits the authority of the governor

20           or the legislature to act in accordance with its authority.

21                B.  The right to file any pleading subject to the suspension as provided by

22           Paragraph A of this Article shall terminate sixty days after the termination of the

23           suspension as provided by Paragraph A of this Article.

Page 1 of 2

CODING:  Words in ~~struck through~~ type are deletions from existing law; words underscored
are additions.

HB NO. 5                                                            **ENROLLED**

1        Section 2.  Code of Civil Procedure Article 562 is hereby enacted to read as follows:

2        Art. 562.  Emergency suspension of abandonment

3            A.  Notwithstanding any other provisions of law to the contrary, in the event

4        the governor declares a state of emergency or disaster pursuant to R.S. 29:721

5        through 772, the Supreme Court of Louisiana may enter an order or series of orders

6        as deemed necessary and appropriate to suspend the period of abandonment for a

7        period of time not to exceed ninety days.  Thereafter, should the need for continuing

8        suspension be necessary to preserve access to the courts, the governor may issue

9        executive orders as deemed appropriate.  The period of suspension authorized by the

10       provisions of this Article shall terminate upon the earlier of an order of the Supreme

11       Court of Louisiana or upon termination of the declared state of disaster or

12       emergency. Nothing in this Article limits the authority of the governor or the

13       legislature to act in accordance with its authority.

14           B.  The right to file any pleading subject to the suspension as provided by

15       Paragraph A of this Article shall terminate sixty days after the termination of the

16       suspension as provided by Paragraph A of this Article.

17       Section 3.  This Act shall become effective upon signature by the governor or, if not

18       signed by the governor, upon expiration of the time for bills to become law without signature

19       by the governor, as provided by Article III, Section 18 of the Constitution of Louisiana.  If

20       vetoed by the governor and subsequently approved by the legislature, this Act shall become

21       effective on the day following such approval.


_____
SPEAKER OF THE HOUSE OF REPRESENTATIVES


_____
PRESIDENT OF THE SENATE


_____
GOVERNOR OF THE STATE OF LOUISIANA

APPROVED: _____


Page 2 of 2

CODING:  Words in ~~struck through~~ type are deletions from existing law; words underscored are additions.

## SUPREME COURT OF LOUISIANA

### O R D E R

Acting under the authority of Louisiana Civil Code Article 3472.1 and Louisiana Code of Civil Procedure Article 562, and considering the state of emergency declared statewide by Governor John Bel Edwards as a result of then-Tropical Storm Laura on August 21, 2020 and the catastrophic damage that Hurricane Laura has caused in the state,

IT IS HEREBY ORDERED THAT:

1.  Emergency suspension of prescription and peremption: All prescriptive and peremptive periods are hereby suspended statewide for a period of thirty days commencing from the Governor's August 21, 2020 declaration of state of emergency.

2.  Emergency suspension of abandonment:  All periods of abandonment are hereby suspended statewide for thirty days commencing from the Governor's August 21, 2020 declaration of state of emergency.

3.  Notwithstanding the foregoing, the periods suspended above shall not include any matter arising out of the Election Code (La. R.S. 18:1 et seq.), which are specifically excluded from this Order.

Given under our hands and seal this 28th day of August A. D., 2020, New Orleans, Louisiana.

FOR THE COURT:

*Bennette J. Johnson*

Chief Justice Bernette J. Johnson



OPC.CV.6192108
JM

# CITATION

**AARON LARRY BOWMAN**

**VS**

**DEPUTY DONOVAN GINN,
OUACHITA PARISH SHERIFF'S
OFFICE, JAY RUSSEL, SHERIFF,
UNIVERSITY OF LOUISIANA
MONROE POLICE DEPARTMENT,
METRO NARCOTICS UNIT,
LOUISIANA STATE POLICE
DEPARTMENT, MONROE POLICE
DEPARTMENT, CITY OF MONROE**

**DOCKET NUMBER: C-20202498**
**SEC: C1**
**STATE OF LOUISIANA**
**PARISH OF OUACHITA**
**FOURTH JUDICIAL DISTRICT COURT**

**OUACHITA PARISH**

TO:

    UNIVERSITY OF LOUISIANA MONROE POLICE DEPARTMENT
    3811 DESIARD AVENUE
    MONROE, LA 71209

YOU HAVE BEEN SUED.
Attached to this Citation is a certified copy of the Petition. The petition tells you what
you are being sued for.

You must EITHER do what the petition asks, OR, within **FIFTEEN (15) days** after you
have received these documents, you must file an answer or other legal pleadings in the
Office of the Clerk of this Court at the Ouachita Parish Court House, 301 South Grand,
Monroe, Louisiana.

If you do not do what the petition asks, or if you do not file an answer or legal pleading
within **FIFTEEN (15) days**, a judgment may be entered against you without further
notice.

This Citation was issued by the Clerk of Court for Ouachita Parish, on this SEPTEMBER
24, 2020.

                        OUACHITA PARISH CLERK OF COURT

Also attached are the following:
PETITION FOR DAMAGES FOR POLICE MISCONDUCT AND EXCESSIVE
FORCE

                    By:_____ JANAE MADISON_____
                            Deputy Clerk

FILED BY: DONECIA BANKS-MILEY #35641

_____ **ORIGINAL**

_____ **SERVICE COPY**

___/___ **FILE COPY**



OPC.CV.6192090
JM

# CITATION

**AARON LARRY BOWMAN**

**VS**

**DEPUTY DONOVAN GINN,
OUACHITA PARISH SHERIFF'S
OFFICE, JAY RUSSEL, SHERIFF,
UNIVERSITY OF LOUISIANA
MONROE POLICE DEPARTMENT,
METRO NARCOTICS UNIT,
LOUISIANA STATE POLICE
DEPARTMENT, MONROE POLICE
DEPARTMENT, CITY OF MONROE**

**DOCKET NUMBER: C-20202498**
SEC: C1
**STATE OF LOUISIANA**
**PARISH OF OUACHITA**
**FOURTH JUDICIAL DISTRICT COURT**

**OUACHITA PARISH**

TO:
LOUISIANA STATE POLICE DEPARTMENT
1240 LA 594
MONROE, LA 71203

YOU HAVE BEEN SUED.
Attached to this Citation is a certified copy of the Petition. The petition tells you what you are being sued for.

You must EITHER do what the petition asks, OR, within **FIFTEEN (15) days** after you have received these documents, you must file an answer or other legal pleadings in the Office of the Clerk of this Court at the Ouachita Parish Court House, 301 South Grand, Monroe, Louisiana.

If you do not do what the petition asks, or if you do not file an answer or legal pleading within **FIFTEEN (15) days**, a judgment may be entered against you without further notice.

This Citation was issued by the Clerk of Court for Ouachita Parish, on this SEPTEMBER 24, 2020.

OUACHITA PARISH CLERK OF COURT

Also attached are the following:
PETITION FOR DAMAGES FOR POLICE MISCONDUCT AND EXCESSIVE FORCE

By: _____ **JANAE MADISON** _____
Deputy Clerk

FILED BY:  DONECIA BANKS-MILEY #35641

_____   **ORIGINAL**

_____   **SERVICE COPY**

___/___   **FILE COPY**


OPC.CV.6192082
JM

# CITATION

**AARON LARRY BOWMAN**

**VS**

**DEPUTY DONOVAN GINN,
OUACHITA PARISH SHERIFF'S
OFFICE, JAY RUSSEL, SHERIFF,
UNIVERSITY OF LOUISIANA
MONROE POLICE DEPARTMENT,
METRO NARCOTICS UNIT,
LOUISIANA STATE POLICE
DEPARTMENT, MONROE POLICE
DEPARTMENT, CITY OF MONROE**

**DOCKET NUMBER: C-20202498**
SEC: C1
**STATE OF LOUISIANA**
**PARISH OF OUACHITA**
**FOURTH JUDICIAL DISTRICT COURT**

**OUACHITA PARISH**

TO:

DEPUTY DONOVAN GINN
400 ST JOHN STREET
MONROE, LA 71201

YOU HAVE BEEN SUED.
Attached to this Citation is a certified copy of the Petition. The petition tells you what
you are being sued for.

You must EITHER do what the petition asks, OR, within **FIFTEEN (15) days** after you
have received these documents, you must file an answer or other legal pleadings in the
Office of the Clerk of this Court at the Ouachita Parish Court House, 301 South Grand,
Monroe, Louisiana.

If you do not do what the petition asks, or if you do not file an answer or legal pleading
within **FIFTEEN (15) days**, a judgment may be entered against you without further
notice.

This Citation was issued by the Clerk of Court for Ouachita Parish, on this SEPTEMBER
24, 2020.

OUACHITA PARISH CLERK OF COURT

Also attached are the following:
PETITION FOR DAMAGES FOR POLICE MISCONDUCT AND EXCESSIVE
FORCE

**JANAE MADISON**
By:_____
Deputy Clerk

FILED BY:  DONECIA BANKS-MILEY #35641

_____ **ORIGINAL**

_____ **SERVICE COPY**

_____ **FILE COPY**



OPC.CV.6192074
JM

# CITATION

**AARON LARRY BOWMAN**

**VS**

**DEPUTY DONOVAN GINN,
OUACHITA PARISH SHERIFF'S
OFFICE, JAY RUSSEL, SHERIFF,
UNIVERSITY OF LOUISIANA
MONROE POLICE DEPARTMENT,
METRO NARCOTICS UNIT,
LOUISIANA STATE POLICE
DEPARTMENT, MONROE POLICE
DEPARTMENT, CITY OF MONROE**

**DOCKET NUMBER: C-20202498**
**SEC: C1**
**STATE OF LOUISIANA**
**PARISH OF OUACHITA**
**FOURTH JUDICIAL DISTRICT COURT**

**OUACHITA PARISH**

TO:

    CITY OF MONROE
    400 LEA JOYNER ESPY
    MONROE, LA 71201

YOU HAVE BEEN SUED.
Attached to this Citation is a certified copy of the Petition. The petition tells you what you are being sued for.

You must EITHER do what the petition asks, OR, within **FIFTEEN (15) days** after you have received these documents, you must file an answer or other legal pleadings in the Office of the Clerk of this Court at the Ouachita Parish Court House, 301 South Grand, Monroe, Louisiana.

If you do not do what the petition asks, or if you do not file an answer or legal pleading within **FIFTEEN (15) days**, a judgment may be entered against you without further notice.

This Citation was issued by the Clerk of Court for Ouachita Parish, on this SEPTEMBER 24, 2020.

                      OUACHITA PARISH CLERK OF COURT

Also attached are the following:
PETITION FOR DAMAGES FOR POLICE MISCONDUCT AND EXCESSIVE FORCE

                              JANAE MADISON
               By:_____
                 Deputy Clerk

FILED BY: DONECIA BANKS-MILEY #35641

_____ **ORIGINAL**

_____ **SERVICE COPY**

_____ **FILE COPY**



OPC.CV.6192066
JM

# CITATION

**AARON LARRY BOWMAN**

**VS**

**DEPUTY DONOVAN GINN,
OUACHITA PARISH SHERIFF'S
OFFICE, JAY RUSSEL, SHERIFF,
UNIVERSITY OF LOUISIANA
MONROE POLICE DEPARTMENT,
METRO NARCOTICS UNIT,
LOUISIANA STATE POLICE
DEPARTMENT, MONROE POLICE
DEPARTMENT, CITY OF MONROE**

**DOCKET NUMBER: C-20202498**
**SEC: C1**
**STATE OF LOUISIANA**
**PARISH OF OUACHITA**
**FOURTH JUDICIAL DISTRICT COURT**

**OUACHITA PARISH**

TO:

JAY RUSSEL, SHERIFF
400 ST. JOHN STREET
MONROE, LA 71201

YOU HAVE BEEN SUED.
Attached to this Citation is a certified copy of the Petition. The petition tells you what
you are being sued for.

You must EITHER do what the petition asks, OR, within **FIFTEEN (15) days** after you
have received these documents, you must file an answer or other legal pleadings in the
Office of the Clerk of this Court at the Ouachita Parish Court House, 301 South Grand,
Monroe, Louisiana.

If you do not do what the petition asks, or if you do not file an answer or legal pleading
within **FIFTEEN (15) days**, a judgment may be entered against you without further
notice.

This Citation was issued by the Clerk of Court for Ouachita Parish, on this SEPTEMBER
24, 2020.

                    OUACHITA PARISH CLERK OF COURT

Also attached are the following:
PETITION FOR DAMAGES FOR POLICE MISCONDUCT AND EXCESSIVE
FORCE

                    **JANAE MADISON**
            By:_____
                    Deputy Clerk

FILED BY:  DONECIA BANKS-MILEY #35641

_____   **ORIGINAL**

_____   **SERVICE COPY**

_____   **FILE COPY**



OPC.CV.6192058
JM

# CITATION

**AARON LARRY BOWMAN**

**VS**

**DEPUTY DONOVAN GINN,
OUACHITA PARISH SHERIFF'S
OFFICE, JAY RUSSEL, SHERIFF,
UNIVERSITY OF LOUISIANA
MONROE POLICE DEPARTMENT,
METRO NARCOTICS UNIT,
LOUISIANA STATE POLICE
DEPARTMENT, MONROE POLICE
DEPARTMENT, CITY OF MONROE**

**DOCKET NUMBER: C-20202498**
**SEC: C1**
**STATE OF LOUISIANA**
**PARISH OF OUACHITA**
**FOURTH JUDICIAL DISTRICT COURT**

**OUACHITA PARISH**

TO:

    OUACHITA PARISH SHERIFF'S OFFICE
    400 ST. JOHN ST
    MONROE, LA 71201

YOU HAVE BEEN SUED.
Attached to this Citation is a certified copy of the Petition. The petition tells you what you are being sued for.

You must EITHER do what the petition asks, OR, within **FIFTEEN (15) days** after you have received these documents, you must file an answer or other legal pleadings in the Office of the Clerk of this Court at the Ouachita Parish Court House, 301 South Grand, Monroe, Louisiana.

If you do not do what the petition asks, or if you do not file an answer or legal pleading within **FIFTEEN (15) days**, a judgment may be entered against you without further notice.

This Citation was issued by the Clerk of Court for Ouachita Parish, on this SEPTEMBER 24, 2020.

                    OUACHITA PARISH CLERK OF COURT

Also attached are the following:
PETITION FOR DAMAGES FOR POLICE MISCONDUCT AND EXCESSIVE FORCE

                By:_____JANAE MADISON_____
                    Deputy Clerk

FILED BY:  DONECIA BANKS-MILEY #35641

_____  **ORIGINAL**

_____  **SERVICE COPY**

____✓___  **FILE COPY**


OPC.CV.6192041
JM

# CITATION

**AARON LARRY BOWMAN**

**VS**

**DEPUTY DONOVAN GINN,
OUACHITA PARISH SHERIFF'S
OFFICE, JAY RUSSEL, SHERIFF,
UNIVERSITY OF LOUISIANA
MONROE POLICE DEPARTMENT,
METRO NARCOTICS UNIT,
LOUISIANA STATE POLICE
DEPARTMENT, MONROE POLICE
DEPARTMENT, CITY OF MONROE**

**DOCKET NUMBER: C-20202498**
**SEC: C1**
**STATE OF LOUISIANA**
**PARISH OF OUACHITA**
**FOURTH JUDICIAL DISTRICT COURT**

**OUACHITA PARISH**

TO:

>  MONROE POLICE DEPARTMENT
>  700 WOOD STREET
>  MONROE,  LA 71201

YOU HAVE BEEN SUED.
Attached to this Citation is a certified copy of the Petition. The petition tells you what
you are being sued for.

You must EITHER do what the petition asks, OR, within **FIFTEEN (15) days** after you
have received these documents, you must file an answer or other legal pleadings in the
Office of the Clerk of this Court at the Ouachita Parish Court House, 301 South Grand,
Monroe, Louisiana.

If you do not do what the petition asks, or if you do not file an answer or legal pleading
within **FIFTEEN (15) days**, a judgment may be entered against you without further
notice.

This Citation was issued by the Clerk of Court for Ouachita Parish, on this SEPTEMBER
24, 2020.

OUACHITA PARISH CLERK OF COURT

Also attached are the following:
PETITION FOR DAMAGES FOR POLICE MISCONDUCT AND EXCESSIVE
FORCE

**JANAE MADISON**
By:_____
Deputy Clerk

FILED BY:  DONECIA BANKS-MILEY #35641

_____  **ORIGINAL**

_____  **SERVICE COPY**

____✓____  **FILE COPY**



OPC.CV.6192033
JM

# CITATION

**AARON LARRY BOWMAN**

**VS**

**DEPUTY DONOVAN GINN,
OUACHITA PARISH SHERIFF'S
OFFICE, JAY RUSSEL, SHERIFF,
UNIVERSITY OF LOUISIANA
MONROE POLICE DEPARTMENT,
METRO NARCOTICS UNIT,
LOUISIANA STATE POLICE
DEPARTMENT, MONROE POLICE
DEPARTMENT, CITY OF MONROE**

**DOCKET NUMBER: C-20202498**
**SEC: C1**
**STATE OF LOUISIANA**
**PARISH OF OUACHITA**
**FOURTH JUDICIAL DISTRICT COURT**

**OUACHITA PARISH**

TO:

METRO NARCOTICS UNIT
500 NATCHITOCHES STREET
WEST MONROE, LA 71291

YOU HAVE BEEN SUED.
Attached to this Citation is a certified copy of the Petition. The petition tells you what you are being sued for.

You must EITHER do what the petition asks, OR, within **FIFTEEN (15) days** after you have received these documents, you must file an answer or other legal pleadings in the Office of the Clerk of this Court at the Ouachita Parish Court House, 301 South Grand, Monroe, Louisiana.

If you do not do what the petition asks, or if you do not file an answer or legal pleading within **FIFTEEN (15) days**, a judgment may be entered against you without further notice.

This Citation was issued by the Clerk of Court for Ouachita Parish, on this SEPTEMBER 24, 2020.

OUACHITA PARISH CLERK OF COURT

Also attached are the following:
PETITION FOR DAMAGES FOR POLICE MISCONDUCT AND EXCESSIVE FORCE

By:_____**JANAE MADISON**_____
        Deputy Clerk

FILED BY: DONECIA BANKS-MILEY #35641

_____ **ORIGINAL**

_____ **SERVICE COPY**

___✓___ **FILE COPY**

Sep. 24. 2020 12:59PM                                    No. 5210   P. 1

**PLEASANT, WILLIAMS & BANKS-MILEY LAW GROUP, LLC**
901 North Third Street
Monroe, LA 71201



# Fax

DATE: _____ 9/24/20 _____

| TO: Janae, Dy. Clerk, Ouachita Parish | FROM: Jeanetta L. Marzell, Assistant to Attorney Kristen B. Pleasant |
|---|---|

TOTAL PAGES: 2 (including cover)

FAX: 318-327-1462

FAX: 318-605-4617

PHONE: 318-327-1444

PHONE: 318-605-4607

RE: Aaron Bowman vs. Ouachita Parish Sheriff Department, et al, Docket No. 2020-2498

COMMENT:

cc.

CONFIDENTIALITY NOTICE:
INFORMATION IN THIS MESSAGE IS INTENDED ONLY FOR THE PERSONAL AND CONFIDENTIAL USE OF THE RECIPIENT(S) NAMED ABOVE This message is sent by or on behalf of an attorney at the law firm of **Pleasant, Williams & Banks-Miley Law Group, LLC**, and is intended only for the use of the individual or entity to whom it is addressed. This message contains information and/or attachments that are privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or is not the employee or agent responsible for delivering this message to the intended recipient, please do not read, copy, use or disclose this communication to anyone. If you have received this communication in error, please notify us immediately by reply e-mail or by telephone (call us collect at 318-605-4607) and immediately delete this message and all of its attachments. Thank you.

[x] Urgent

[x] Please review

[x] Please comment

[ ] For your records



Kristen B. Pleasant
Jessica W. Williams*
Donecia Banks-Miley
*Attorneys At Law*

*Qualified Mediator*

901 N 3rd Street
Monroe, LA 71201
Office: 318-605-4607
Facsimile: 318-605-4617

September 24, 2020

*FILED*

SEP 24 2020

DEPUTY CLERK
4TH JUDICIAL DISTRICT COURT
OUACHITA PARISH, LA

**VIA FACSIMILE 318-237-1462**
**Ouachita Parish Clerk of Court**
**ATTN: JENAE**
301 South Grand
Monroe, LA 71203

RE: AARON BOWMAN VS. OUACHITA PARISH SHERIFF DEPARTMENT, ET AL
DOCKET #2020-2498

Dear Clerk of Court:

I am responding to the request to clarify whether *Exhibit B* (flash drive of videos) filed within this instant suit is to be served each of the named defendants. I request this Honorable Clerk of Court to file all Exhibits into the suit but do not serve *Exhibit B* (flash drive of videos) to any parties to avoid any complications of service. I will serve *Exhibit B* to all named defendants through email or personal delivery.

Please find my contact information listed above. If you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

Donecia Banks-Miley, Esq.

CV. SECT. 1

## LOUISIANA CIVIL CASE REPORTING
### Civil Case Cover Sheet - LA. R.S. 13:4688 and
### Part G, §13, Louisiana Supreme Court General Administrative Rules

This civil case cover sheet shall be completed by counsel for the petitioner, counsel's authorized representative, or by the self-represented litigant (if not represented by counsel) and submitted with the original petition filed with the court.  The information should be the best available at the time of filing. This information does not constitute a discovery request, response or supplementation, and is not admissible at trial.

**Suit Caption:**

Aaron Larry Bowman        vs.        Ouachita Parish Sheriff's office, etc

**Court:** _____

**Docket Number:** 20-2498

**Parish of Filing:** _____

**Filing Date:** Sept. 21, 2020

**Name of Lead Petitioner's Attorney:** Doneica Banks-Miley

**Name of Self-Represented Litigant:** _____

**Number of named petitioners:** _____

**Number of named defendants:** _____

**Type of Lawsuit:  Please check the categories which most appropriately apply to this suit (no more than 3 categories should be checked):**

☐ Auto: Personal Injury
☐ Auto: Wrongful Death
☐ Asbestos: Property Damage
☐ Product Liability
☐ Intentional Bodily Injury
☐ Intentional Wrongful Death
☐ Business Tort
☐ Defamation
☐ Environmental Tort
☐ Intellectual Property
☐ Legal Malpractice
☐ Other Professional Malpractice
☐ Maritime
☐ Wrongful Death
☐ General Negligence

☐ Auto: Property Damage
☐ Auto: Uninsured Motorist
☐ Asbestos: Personal Injury/Death
☐ Premise Liability
☐ Intentional Property Damage
☐ Unfair Business Practice
☐ Fraud
☐ Professional Negligence
☐ Medical Malpractice
☐ Toxic Tort
☐ Other Tort (describe below)
☐ Redhibition
☐ Class action (nature of case)

*Info not Provided by Attorney*

**Please briefly describe the nature of the litigation in one sentence of additional detail:**

_____

_____

Following the completion of this form by counsel, counsel's representative, or by the self-represented litigant, this document will be submitted to the Office of the Judicial Administrator, Supreme Court of Louisiana, by the Clerk of Court.

Name, address and contact information of person completing form:

**Name** _____

**Signature** _____

**Address** _____

**Phone number:** _____   **E-mail address:** _____