UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| AARON LARRY BOWMAN. | NO. 3:20-01372 |
| *Plaintiff* | |
| v. | JUDGE DOUGHTY |
| OUACHITA PARISH SHERIFF'S OFFICE, ET AL | |
| *Defendants* | MAG. JUDGE HAYES |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AND ALTERNATIVE MOTION TO STAY**

**City of Monroe**
Legal Department – Civil Division
P.O. Box 123 (71210)
400 Lea Joyner Memorial Expressway
Monroe, Louisiana 71201
Tel: (318) 329-2240
Fax: (318) 329-3427
brandon.creekbaum@ci.monroe.la.us

BY: */s/ Brandon W. Creekbaum*
      Brandon W. Creekbaum
      Louisiana Bar Roll No. 33791
**Attorney for the City and MPD**

## **Table of Contents**

Table of Contents ........................................................................................................ ii

Table of Authorities ................................................................................................... iii

Memorandum ............................................................................................................... 1

    I.    Plaintiff's allegations and related state court criminal proceedings ................................. 2

        A.   Plaintiff's factual allegations ............................................................................. 2

        B.   Plaintiff's legal claims ....................................................................................... 4

        C.   Related state court criminal proceedings ......................................................... 5

    II.   Motion to dismiss standard ........................................................................................... 6

    III.  The MPD lacks the capacity to be sued ........................................................................ 7

    V.   Plaintiff's claims are time-barred................................................................................... 8

        A.   Plaintiff's claims are facially prescribed under state and federal law ............................ 8

        B.   The Louisiana Legislature provides for a "limited" suspension of prescription related to COVID-19, but it is inapplicable here ..................................... 10

        C.   The Legislature's extension for "deadlines in legal proceedings" does not apply ........ 12

        D.   The Louisiana Supreme Court's Hurricane Laura order does not apply here ............. 13

    VI.  Plaintiff fails to state a claim under Section 1983 against the City ................................. 14

    VII.  Plaintiff fails to state a claim against the City under state law ..................................... 18

        A.   Plaintiff's state law claims against the City itself should be dismissed........................ 19

        B.   Plaintiff's vicarious liability claims should be dismissed............................................ 20

    VIII. Plaintiff fails to state a claim for punitive damages under state or federal law ........... 21

    IX.  Alternatively, Plaintiff's claims should be stayed due to his pending criminal charges .. 22

    X.   Conclusion .................................................................................................................. 23

## Table of Authorities

**Cases**

*Abshire v. Crump*,
    52,699 (La. App. 2 Cir. 8/14/19), 285 So. 3d 22 .................................................. 8

*Adams v. Monroe Trans. Sys.*,
    No. 3:19-CV-00281 (W.D. La. Nov. 13, 2020) ........................................................ 7

*Albert v. Farm Bureau Insurance Company*,
    940 So. 2d 620 (La. 2006) ............................................................................... 22

*Anthony v. Sch. Bd. of Iberia Par.*,
    692 F. Supp. 2d 612 (W.D. La. 2010) ................................................................ 15

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................... 6

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*,
    520 U.S. 397 (1997) .................................................................................... 16, 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .......................................................................................... 6

*Benfield v. Magee*,
    945 F.3d 333 (5th Cir. 2019) ............................................................................. 6

*Bennett v. City of Slidell*,
    735 F.2d 861 (5th Cir.1984) (*en banc*) ......................................................... 15, 16

*Benson v. ABC Ins. Co.*,
    2012-517 (La. App. 3 Cir. 11/7/12), 106 So. 3d 143, *writ denied,* 2012-2650
    (La. 2/8/13), 108 So. 3d 86 ............................................................................... 9

*Braden v. Texas A & M Univ. Sys.*,
    636 F.2d 90 (5th Cir. 1981) ............................................................................... 8

*Bradley v. Sheriff's Dep't St. Landry Par.*,
    958 F.3d 387 (5th Cir. 2020) ............................................................................. 8

*Brown v. Bryan County*,
    219 F.3d 450 (5th Cir. 2000) ....................................................................... 15, 16

*Burge v. Par. of St. Tammany*,
    996 F.2d 786 (5th Cir. 1993) ............................................................................. 9

*Campbell v. Sturdivant*,
    No. 3:20-cv-00068 (W.D. La. November 25, 2020) ............................................. 15

*Carter v. Monroe Police Dep't*,
    No. CV 19-0884, 2019 WL 6125242 (W.D. La. Oct. 29, 2019), *report and recommendation*
    *adopted*, No. CV 19-0884, 2019 WL 6130827 (W.D. La. Nov. 18, 2019) ............... 8

*Castellano v. Fragozo*,
    352 F.3d 939 (5th Cir. 2003) ........................................................................... 18

*Catahoula Par. Sch. Bd. v. Louisiana Mach. Rentals, LLC*,
    2012-2504 (La. 10/15/13), 124 So. 3d 1065 ..................................................... 13

*City of Canton, Ohio v. Harris*,
    489 U.S. 378 (1989) ........................................................................................ 17

*City of Newport v. Fact Concerts, Inc.*,
    453 U.S. 247 (1981)............................................................................................ 22

*Clark v. Lafayette Police Dep't*,
    No. 6:18-CV-00058, 2018 WL 3357899 (W.D. La. June 22, 2018), *report and*
    *recommendation adopted*, No. 6:18-CV-00058, 2018 WL 3357257 (W.D. La. July 9, 2018) .. 7

*Club Retro, L.L.C. v. Hilton*,
    568 F.3d 181 (5th Cir. 2009) ................................................................................ 6

*Connick v. Thompson*,
    563 U.S. 51 (2011)............................................................................................ 16

*Cote v. City of Shreveport*,
    46,571 (La. App. 2 Cir. 9/21/11), 73 So. 3d 435 .................................................... 19

*Covington v. City of Madisonville, Texas*,
    812 F. App'x 219 (5th Cir. 2020) ......................................................................... 17

*Crane v. Childers*,
    655 F. App'x 203 (5th Cir. 2016) .......................................................................... 9

*Davis v. Chapman*,
    No. 3:12-CV-0830, 2013 WL 3465797 (W.D. La. July 9, 2013)................................ 8

*Dejoie v. Medley*,
    945 So.2d 968 (La. App. 2d Cir. 2006) .................................................................. 7

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008) ............................................................................... 6

*Dugas v. City of Breaux Bridge Police Dept.*,
    1999-1320 (La. App. 3 Cir. 2/2/00), 757 So. 2d 741, *writ denied,* 2000-0671 (La. 4/20/00),
    760 So. 2d 1159 ............................................................................................... 8

*Elzy v. Roberson*,
    868 F.2d 793, 794–95 (5th Cir. 1989) .................................................................... 9

*Grant v. Dailey*,
    No. CIV.A. 11-1374, 2012 WL 368709 (E.D. La. Feb. 3, 2012) ............................... 23

*Griffin v. Kmart Corp.*,
    00–1334 (La.App.5th Cir.11/28/00), 776 So.2d 1226 .............................................. 19

*Heck v. Humphrey*,
    512 U.S. 477 (1994)........................................................................................... 23

*Hunter v. Jefferson Par. Pub. Sch. Sys.*,
    No. 17-2015, 2017 WL 2910992 (E.D. La. July 7, 2017) ........................................ 22

*Huth v. Pickering*,
    07-181 (La. App. 5 Cir. 8/28/07), 966 So. 2d 652, *writ denied,* 2007-1889 (La. 11/21/07),
    967 So. 2d 1157 ............................................................................................... 11

*Int'l Paper Co. v. Hilton*,
    2007-0290 (La. 10/16/07), 966 So. 2d 545............................................................ 13

*Jones v. Alcoa, Inc.*,
    339 F.3d 359 (5th Cir.2003) ................................................................................ 8

iv

*Jones v. City of Monroe*,
  No. 3:19-CV-00832, 2019 WL 5488603 (W.D. La. Oct. 8, 2019), *report and recommendation adopted*, No. 3:19-CV-00832, 2019 WL 5491922 (W.D. La. Oct. 24, 2019) ........................ 22
*McConney v. City of Houston*,
  863 F.2d 1180 (5th Cir. 1989) ........................................................................................ 15
*Mejia v. Unknown Officers*,
  168 F.3d 485 (5th Cir. 1999) ............................................................................................ 8
*Monell v. Dep't of Soc. Servs. of City of New York*,
  436 U.S. 658 (1978) ........................................................................................................ 14
*Nobre on behalf of K.M.C. v. Louisiana Dep't of Pub. Safety*,
  935 F.3d 437 (5th Cir. 2019) ............................................................................................ 8
*Oliver v. Gusman*,
  No. CV 18-7845, 2020 WL 1303493 (E.D. La. Mar. 19, 2020) ....................................... 16
*Pineda v. City of Houston*,
  291 F.3d 325 (5th Cir.2002) ........................................................................................... 15
*Piotrowski v. City of Houston*,
  237 F.3d 567 (5th Cir. 2001) ........................................................................................... 15
*Rhyne v. Henderson Cty.*,
  973 F.2d 386 (5th Cir. 1992) ........................................................................................... 17
*Roberts v. Benoit*,
  605 So. 2d 1032 (La. 1991), *on reh'g* (May 28, 1992) ..................................................... 19
*Simmons v. Hughes*,
  2019-1389 (La. App. 1 Cir. 11/25/20) ............................................................................. 20
*State of Louisiana v. Aaron Larry Bowman, Jr.*,
  No. 19-CR-3840 (4th J.D.C., Ouachita Parish) .......................................................... 5, 22
*Stiel v. Heritage Numismatic Auctions, Inc.*,
  No. 19-10961, 2020 WL 2769099 (5th Cir. May 27, 2020) .............................................. 6
*Sullivan v. Leor Energy, LLC*,
  600 F.3d 542 (5th Cir. 2010) ............................................................................................ 7
*Taylor v. Bailey Tool Mfg. Co.*,
  744 F.3d 944 (5th Cir. 2014) ............................................................................................ 8
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .......................................................................................................... 6
*Union Pac. R.R. Co. v. Taylor Truck Line, Inc.*,
  No. CV 15-0074, 2016 WL 7480504 (W.D. La. Oct. 31, 2016), *report and recommendation adopted*, No. CV 15-0074, 2016 WL 7473776 (W.D. La. Dec. 28, 2016) ................................ 7
*Valle v. City of Houston*,
  613 F.3d 536 (5th Cir. 2010) ..................................................................................... 15, 16
*Wallace v. Kato*,
  549 U.S. 384 (2007) ........................................................................................................ 23
*Wells v. Nail*,
  No. CV 18-0553, 2018 WL 4762161 (W.D. La. Aug. 7, 2018), *report and recommendation adopted,* No. CV 18-0553, 2018 WL 4760847 (W.D. La. Oct. 2, 2018) .................................. 9

*Will v. Michigan Dep't of State Police*,
   491 U.S. 58 (1989) ................................................................................................ 14

## Statutes
42 U.S.C. § 1983 ................................................................................ 4, 8, 14, 16
La. C.C. art. 2320 .......................................................................................... 20
La. C.C. art. 3492 ........................................................................................ 8, 9
La. C.C.P. art. 3472.1 ............................................................................... 10, 13
La. C.Cr.P. art. 220 ....................................................................................... 20
La. R.S. 14:108.1 ...................................................................................... 5, 22
La. R.S. 14:108.2 ................................................................................. 5, 22, 23
La. R.S. 14:34.2 .................................................................................. 5, 22, 23
La. R.S. 32:79 .......................................................................................... 5, 22
La. R.S. 42:1441.3 ................................................................................. 16, 20
La. R.S. 9:5822 ............................................................................................ 11
La. R.S. 9:5823 ............................................................................................ 11
La. R.S. 9:5828 ............................................................................................ 10
La. R.S. 9:5829 .................................................................................. 10, 11, 13
La. R.S. 9:5830 ..................................................................................... 10, 12
Louisiana Legislature Acts 2020, 1st Ex. Sess., Act No. 3, § 1, eff. June 25, 2020 .................... 13
Louisiana Legislature Acts 2020, Act No. 162, § 1, eff. June 9, 2020 ........................ 10
Monroe City Charter § 3-01 ............................................................................. 7
Monroe City Charter § 4-01 ............................................................................. 7
Monroe City Charter § 4-04 ............................................................................. 7

## Other Authorities
30 JBE 2020 ................................................................................................ 10
75 JBE 2020 ...................................................................................... 10, 11, 12
La. Sup. Ct. Order, August 28, 2020 .......................................................... 14

## Rules
Fed. R. Civ. Proc. 12(b)(6) ............................................................................. 6

## Constitutional Provisions
La. Const. art. II .......................................................................................... 5
U.S. Const. amend XIV ................................................................................. 4
U.S. Const. amend. IV ........................................................................... 4, 18

**Memorandum**

On September 21, 2020, Plaintiff, Aaron L. Bowman, filed this suit against numerous public entities arising from a traffic stop on May 30, 2019. Plaintiff claims that, during the traffic stop, Deputy Donovan Ginn and "other officers" used excessive force against him. Plaintiff asserts that one of the officers present, who is presently identified as "John Doe # 5", was a Monroe Police Department officer that was "involved" in the use of force. For purposes of this motion, Plaintiff sued the Monroe Police Department ("the MPD"), the city of Monroe, Louisiana ("City"), and the unknown officer (collectively, the "City Defendants") seeking damages under state and federal law. Only the MPD and City appear here, because the alleged John Doe employee has neither been identified nor served.[1]

Plaintiff's suit against the MPD and City should be dismissed for numerous reasons. *First*, the MPD lacks the capacity to be sued under state or federal law. *Second*, all Plaintiff's claims against the City Defendants are time-barred. *Third*, Plaintiff fails to state a claim against the City under Section 1983. *Fourth*, Plaintiff fails to state a claim against the City for its *own* actions under state law. *Fifth*, Plaintiff's bare allegations against the John Doe MPD employee are insufficient to state a claim for vicarious liability under state law. *Fifth*, and finally, Plaintiff does not have a claim for punitive damages against the City under state or federal law. Thus, Plaintiff's claims should be dismissed.

If, however, this Court determines that some or all the claims in this case survive this Motion to Dismiss, this Court should stay the case pending the outcome of Plaintiff's pending

---

[1] Many of the same arguments in this case, however, would be applicable to any John Doe defendant once he or she is served. For example, the City's timeliness arguments would be applicable to any of its purported employees. Because these arguments would apply equally to the unnamed and unserved John Doe MPD officer, this Court should apply any limitations bar (or other arguments resulting in dismissal) to that unidentified MPD employee.

criminal case. Plaintiff is currently facing criminal prosecution in the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana which directly implicates the claims asserted in this case. Because the pending criminal matter has a direct impact on the ongoing proceedings here, and only if some claims proceed past this pre-trial motion, the City Defendants request that this Court stay these proceedings.

## I.    Plaintiff's allegations and related state court criminal proceedings

Plaintiff originally filed this suit in Louisiana state court on September 21, 2020. [Doc. 1-2]. The suit was removed to this Court on October 22, 2020. [Doc. 1]. Once removed, and in response to other defendants' motions to dismiss, Plaintiff filed an Amended Complaint, which adopted and incorporated the entire state-court petition. [Doc. 19, ¶ 1]. Plaintiff also has an ongoing criminal matter related to this traffic stop and arrest that is pending in state court. Plaintiff's allegations and the state court matter are recounted here.

### A.  Plaintiff's factual allegations

Plaintiff alleges that on May 30, 2019, while he was travelling home, he noticed a white truck behind him that "appeared to be the police." [Doc. 1-2, ¶ 6]. Plaintiff proceeded home and "deputies/officers" pulled in behind him.[2] *Id*. at ¶ 7. Plaintiff "believe(s)" that the officer or deputies involved were members of the Ouachita Parish Sherriff's Office "Special Crimes Apprehension Team" ("SCAT Team"), which according to Plaintiff, is a "high intensity" patrol unit that "assists" agencies, including the Monroe Police Department. *Id*. at ¶¶ 4 and 5; [Doc. 19, ¶ 26].

---

[2] Plaintiff attached Deputy Ginn's police report to the state-court Petition. [Doc. 1-2, CM/ECF p. 17]. In that report, Deputy Ginn states that he initiated a traffic stop after Plaintiff committed a traffic violation by crossing the center line. Plaintiff does not mention the traffic violation in his Petition, but he also does not dispute Deputy Ginn's account of that violation.

Plaintiff claims that Deputy Ginn (apparently after Plaintiff stopped the car) and "other officers" proceeded to question him. [Doc. 1-2, at ¶ 8]. Plaintiff alleges that he kept his hands in plain view during the questioning. *Id.* Then, some unknown officer "opened his car door" and began asking whether Plaintiff "had anything on him," which Plaintiff believes was a reference to drugs or weapons. *Id.* at ¶ 9. Plaintiff responded that he had no guns or drugs. *Id.*

Plaintiff claims that "the officers" then began to pull him out of his vehicle, while other officers began to arrive on the scene. *Id.* at ¶ 10. Plaintiff claims he was dragged to the ground, face down, and that "officers" began to hit or kick him. *Id.* at ¶ 11. Plaintiff claims that he did not resist, and the officers continued to "beat" him. *Id.* at ¶ 12. Plaintiff states that "he was not the aggressor but was actually beaten terribly by Deputy Ginn and other officers." *Id.* at ¶ 16. Plaintiff alleges that he "does not recall the exact number of deputies/officers involved in the beating." *Id.* at ¶ 13. Plaintiff finally alleges that video footage[3] captured the incident (which is attached to the complaint), and that a witness "asserts that [Plaintiff] was not resisting." *Id.* at ¶ 18.

An ambulance was called and arrived on the scene. *Id.* at ¶ 21. Plaintiff was transported to St. Francis Medical Center where he received treatment and later followed up with Glenwood Regional Medical Center. *Id.* at ¶ 21. Plaintiff claims that, as a result of the alleged beating, he sustained multiple lacerations, a fractured arm, and broken ribs. *Id.* at ¶ 13. Plaintiff claims that he is a dialysis patient, and the beating was extremely detrimental to his health. *Id.* at ¶ 14.

---

[3] The video footage Plaintiff relies on (which is attached to the complaint and filed in the record here) is not extremely helpful. The footage is hard to see, is not provided in any chronological order, does not appear to record the events leading up to the encounter, and does not appear to show a "group" beating. If anything, the video appears to undercut Plaintiff's assertions, because when the videos apparently begin, there is a struggle already underway, and Plaintiff appears to be actively refusing officer orders. In the background of one video, a woman can be heard imploring Plaintiff not to fight with the officers.

Plaintiff alleges that he was not arrested at the scene for any crime.[4] *Id*. at ¶ 22. Instead, Deputy Ginn obtained an arrest warrant a few days later. *Id.* Plaintiff claims that the police report used by Deputy Ginn, presumably to seek the warrant, was "fabricated" and "untrue." *Id*. at ¶ 16. Plaintiff does not allege that the City, the MPD, or any of its employees had any involvement in preparing the police report or seeking the warrant.

Plaintiff named the MPD and the City as defendants in his original state-court Petition. [Doc. 1-2, ¶1(D) and (G)]. By Amended Complaint, Plaintiff named as a defendant "John Doe #5," who he claims was "an officer in the Monroe Police Department." [Doc. 19, ¶ 14]. Plaintiff claims that John Doe #5 was "involved in the beating of Plaintiff[.]" *Id*. at ¶ 27.

## B.  Plaintiff's legal claims

Plaintiff asserts claims under 42 U.S.C. § 1983 for alleged violations of his Fourth and Fourteenth Amendment rights under the United States Constitution. [Doc. 1-2, ¶ 23-26]. Plaintiff asserts that the Deputy Ginn and the other officers used "excessive force" and violated his right to be free "from unreasonable searches and seizures." *See id*. at ¶¶23-35. Plaintiff claims that the City and/or MPD are responsible for "improper screening," "hiring…negligent officers," failing to train or supervise officers "regarding the constitutional limitations of the use of excessive force," for failing "to promulgate and operationalize a constitutional use of excessive force policy," and for "deliberate indifference." *Id*. at ¶ 27. Plaintiff also claims the City would be liable under the Fourth and Fourteenth Amendment because the officers were in the "course and scope of their employment" and "while acting in the official capacities as police officers." *Id*. at ¶¶ 30-31, 33.

Plaintiff also asserts state law causes of action. Plaintiff sued the City and the MPD for its own negligence and for the negligence of its alleged officer. *Id*. at ¶ 35-49. Plaintiff's claims under

---

[4] Deputy Ginn's report confirms this fact. In his report, Deputy Ginn wrote that Plaintiff was not arrested because he was transported from the scene. [Doc. 1-2, CM/ECF p. 17].

state law largely mirror his federal law claims, *i.e.*, that the officers used excessive force and for negligent hiring, supervision, and training. *Id*. Plaintiff adds an additional claim under Article 2 of the Louisiana Constitution for the deprivation of "life, liberty or property" without due process of law. *Id*. at 49.

Plaintiff asserts that he has suffered damages in the form of damages from "assault and battery," negligent and intentional infliction of emotional distress, past and future mental anguish, past and future loss of enjoyment of life, past and future medical expense, punitive damages, and attorney's fees. *Id*. at ¶ 50; [Doc. 19, ¶ 32].

### C.  Related state court criminal proceedings

As Plaintiff indicated, Deputy Ginn obtained a warrant to arrest Plaintiff on June 3, 2019. [Doc. 1-2, ¶ 22; CM/ECF pp. 13-18]. According to the Ouachita Parish Sheriff's Office online booking records, Plaintiff was apprehended on that (and a host of other) warrants on July 15, 2019. [Ex. 1]. On August 13, 2019, in *State of Louisiana v. Aaron Larry Bowman, Jr.*, No. 19-CR-3840 (4th J.D.C., Ouachita Parish), Plaintiff was charged with four criminal counts by Bill of Information: 1) Count 1 – improper lane usage in violation of La. R.S. 32:79; 2) Count 2 – resisting an officer by flight in violation of La. R.S. 14:108.1; 3) Count 3 – resisting an officer with force or violence in violation of La. R.S. 14:108.2; and 4) Count 4 – simple battery on a police officer in violation of La. R.S. 14:34.2. *Id*. On April 23, 2020, the state criminal court conducted a preliminary examination to determine whether probable cause existed for the four charges; the court determined that Count 2 (flight) was unsupported, but "did find probable cause on remaining counts to hold [Plaintiff] for trial." *Id*. The criminal charges remain pending, with the next court appearance currently scheduled for January 10, 2021.

## II.     Motion to dismiss standard

The Federal Rules allow dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. Proc. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Although a complaint does not need "detailed factual allegations" to survive a Rule 12(b)(6) motion, a plaintiff must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. On a motion to dismiss, courts accept "all well-pleaded facts as true, drawing all reasonable inferences in the nonmoving party's favor." *Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)). Courts, however, do not "accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Id*. (citing *Iqbal*, 556 U.S. at 678) (cleaned up).

In considering a motion to dismiss, "[a] court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). At the pleading stage, courts may consider public records, including records of judicial proceedings in state court. *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020). A court may also consider documents attached to the Rule 12(b)(6) motion "that are referred to in the plaintiff's complaint

6

and are central to the plaintiff's claim." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (internal quotation marks and citation omitted).

### III.     The MPD lacks the capacity to be sued

"[A]lthough Rule 12(b) does not specifically authorize a motion to dismiss based on a lack of capacity to be sued, '[f]ederal courts . . . traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules or by statutes' including motions raising a lack of capacity to sue or be sued." *Adams v. Monroe Trans. Sys.*, No. 3:19-CV-00281, p. 3 (W.D. La. Nov. 13, 2020) (quoting *Clark v. Lafayette Police Dep't*, No. 6:18-CV-00058, 2018 WL 3357899, at *1 (W.D. La. June 22, 2018), *report and recommendation adopted*, No. 6:18-CV-00058, 2018 WL 3357257 (W.D. La. July 9, 2018)). "'The Fifth Circuit has implicitly approved 12(b) motions arguing the lack of capacity to be sued.'" *Id*.

Plaintiff named MPD as a defendant in this matter, but it lacks the capacity to be sued under federal and state law. "Under Federal Rule of Civil Procedure 17(b) . . ., 'capacity to sue or be sued shall be determined by the law of the state in which the district court is held,' i.e., Louisiana." *Union Pac. R.R. Co. v. Taylor Truck Line, Inc.*, No. CV 15-0074, 2016 WL 7480504, at *3 (W.D. La. Oct. 31, 2016), *report and recommendation adopted*, No. CV 15-0074, 2016 WL 7473776 (W.D. La. Dec. 28, 2016). "To enjoy the capacity to be sued under Louisiana law, an entity must qualify as a 'juridical person.'" *Id*. (quoting *Dejoie v. Medley*, 945 So.2d 968, 972 (La. App. 2d Cir. 2006)).

This Court has specifically considered whether MPD has the capacity to be sued and has held that it does not.[5] *Carter v. Monroe Police Dep't*, No. CV 19-0884, 2019 WL 6125242, at *8

---

[5] The Monroe Police Department is a dependent agency of the City and has no authority separate and distinct from the City. *See* MONROE CITY CHARTER § 3-01 (stating that mayor is the chief executive office of the City exercising all control over departments); MONROE CITY CHARTER § 4-01 (stating that all departments are under the direction of the mayor as established by the Charter); MONROE CITY CHARTER § 4-04 (establishing the police department).

(W.D. La. Oct. 29, 2019), *report and recommendation adopted*, No. CV 19-0884, 2019 WL 6130827 (W.D. La. Nov. 18, 2019); *Davis v. Chapman*, No. 3:12-CV-0830, 2013 WL 3465797, at *3 (W.D. La. July 9, 2013) (finding claims against MPD to be "frivolous" and dismissing for lack of capacity). Under similar circumstances, Louisiana courts have held that dependent police departments are not juridical entities capable of being sued. *Dugas v. City of Breaux Bridge Police Dept.*, 1999-1320 (La. App. 3 Cir. 2/2/00), 757 So. 2d 741, *writ denied,* 2000-0671 (La. 4/20/00), 760 So. 2d 1159; *Abshire v. Crump*, 52,699 (La. App. 2 Cir. 8/14/19), 285 So. 3d 22, 25 (Shreveport Police Department lacks capacity to be sued). Thus, because MPD is not a juridical entity capable of being sued, the claims against it should be dismissed for lack of capacity.

## V.    Plaintiff's claims are time-barred

Plaintiff's claims against the City and MPD are time-barred. "A motion to dismiss may be granted on a statute of limitations defense where it is evident from the pleadings that the action is time-barred, and the pleadings fail to raise some basis for tolling." *Taylor v. Bailey Tool Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014) (citing *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir.2003)). Although state law governs the limitations period, federal law governs when the cause of action accrues. *Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 391 (5th Cir. 2020).

### A.  Plaintiff's claims are facially prescribed under state and federal law

For Section 1983 claims, federal courts "look to the law of the forum state" to determine the applicable limitations period. *Nobre on behalf of K.M.C. v. Louisiana Dep't of Pub. Safety*, 935 F.3d 437, 440 (5th Cir. 2019) (citing *Braden v. Texas A & M Univ. Sys.*, 636 F.2d 90, 92 (5th Cir. 1981)); *Mejia v. Unknown Officers*, 168 F.3d 485 (5th Cir. 1999) (stating that "section 1983 actions borrow the forum state's general personal injury limitations."). Federal courts in Louisiana apply La. C.C. art. 3492 to Section 1983 claims. *Elzy v. Roberson*, 868 F.2d 793, 794–95 (5th Cir.

1989). Under Civil Code article 3492, Louisiana's state-law general statute of limitations for torts, "[d]elictual actions are subject to a liberative prescription of one year," which "commences to run from the day injury or damage is sustained." La. C.C. art. 3492.   Thus, in this case, Plaintiff's "state law [tort] claims and § 1983 claim are subject to the one-year prescriptive period for delictual actions under Louisiana law." *Crane v. Childers*, 655 F. App'x 203, 204 (5th Cir. 2016) (citing La. C.C. art. 3492); *see also*, *Benson v. ABC Ins. Co.*, 2012-517 (La. App. 3 Cir. 11/7/12), 106 So. 3d 143, 145, *writ denied,* 2012-2650 (La. 2/8/13), 108 So. 3d 86 (excessive force claim subject to one year prescriptive period).

Plaintiff alleges he was injured and subjected to excessive force on May 30, 2019. Excessive force claims accrue on "the day of the alleged excessive force," *Wells v. Nail*, No. CV 18-0553, 2018 WL 4762161, at *2 (W.D. La. Aug. 7, 2018), *report and recommendation adopted,* No. CV 18-0553, 2018 WL 4760847 (W.D. La. Oct. 2, 2018), and any attenuated injury caused by the municipality would have accrued on that date. Thus, Plaintiff's claims would have had to have been filed no later than May 30, 2020.   But state law also governs whether the time to file can be tolled, in this case by suspension or interruption. *Burge v. Par. of St. Tammany*, 996 F.2d 786, 788 (5th Cir. 1993). Plaintiff appears to seek such tolling here. [Doc. 1-2, CM/ECF pp. 10, 21-43 (referencing COVID-19 and Hurricane Laura suspensions of prescription)].

At the end of his state-court Petition, Plaintiff asks this Court to "honor his request for filing" considering the Louisiana Supreme Court's, Governor Edwards', and the Louisiana Legislature's actions concerning COVID-19 and Hurricane Laura. *Id*. at p. 10; *see also* [Doc. 19, ¶ 28]. This request fails for a few reasons. *First*, the Louisiana Legislature ratified Governor Edwards' ongoing suspension of prescription only from March 17, 2020 until July 5, 2020 and mandated that any suits prescribing during the limited period of suspension must be filed July 6,

2020. Louisiana Legislature Acts 2020, Act No. 162, § 1, eff. June 9, 2020 (designated, in part, as La. R.S. 9:5829). *Second*, the ability to seek a further tolling of legal deadlines established by the Legislature only applied to "deadlines in legal proceedings," and this was clearly not a legal proceeding pending at the time the Legislature acted. *See* La. R.S. 9:5830. *Third*, the Louisiana Supreme Court did not enact any statewide suspensions during COVID-19 under La. C.C.P. art. 3472.1, and its Hurricane Laura Order – on August 28, 2020 – was too late to save Plaintiff's already stale claims.

**B. The Louisiana Legislature provides for a "limited" suspension of prescription related to COVID-19, but it is inapplicable here**

In response to the COVID-19 pandemic, Louisiana state officials have taken numerous actions to deal with the pandemic. For purposes of this case, Governor John Bel Edwards, early on, suspended legal delays – both for limitations purposes and existing legal proceedings. *See* 30 JBE 2020 (signed March 16, 2020). The inherent problems with COVID-19 continued, and the Governor continued to respond with additional suspensions. *See e.g.* 75 JBE 2020, § H (signed June 4, 2020, extending prescriptive deadlines through July 5, 2020). In the meantime, the Louisiana Legislature also acted. In their Regular 2020 Session, Act 182 became law. That Act, which became law and designated as La. R.S. 9:5828, *et seq.*, addressed the ongoing suspensions of prescription and peremption ordered by the Governor. La. R.S. 9:5828(A). There, the Legislature "ratified" the Governor's suspension of prescription (and any extensions thereof) subject to limitations imposed by the Legislature. La. R.S. 9:5828(B). The applicable law concerning prescription states, in pertinent part:

10

### § 5829. Suspension and extension of prescription and peremption; exceptions

A. All prescriptions, including liberative, acquisitive, and the prescription of nonuse, abandonment periods, and all peremptive periods shall be subject to a limited suspension or extension during the time period of March 17, 2020, through July 5, 2020; however, the suspension or extension of these periods shall be limited and shall apply only if these periods would have otherwise expired during the time period of March 17, 2020, through July 5, 2020. The right to file a pleading or motion to enforce any right, claim, or action which would have expired during the time period of March 17, 2020, through July 5, 2020, shall expire on July 6, 2020.

La. R.S. 9:5829. In this section, the Legislature ratified Governor Edwards' extension of prescription and peremption through July 5, 2020. *See* 75 JBE 2020. The Legislature, however, fixed a date by which any claim that expired during the period of suspension must be filed: July 6, 2020. Thus, the Legislature determined that any action that was suspended during COVID-19 *must* have been filed no later than July 6, 2020. As the Legislature determined, this was not a suspension that afforded months of additional time; it was a suspension with deadline. That deadline expired well before Plaintiff filed suit in September 2020.[6]

Plaintiff's claim accrued on May 30, 2019. Plaintiff was entitled to the "limited" suspension of the prescriptive period, but Plaintiff obviously did not file a claim or suit by July 6, 2020. Instead, he filed his suit on September 21, 2020. Even with the suspension granted by the Governor, which was later ratified by the Legislature, Plaintiff failed to meet the legislatively enacted deadline to benefit from the suspension. Plaintiff's claim is, thus, facially prescribed.

---

[6] This is not the first time the Louisiana Legislature has enacted "limited suspensions." In response to Hurricanes Katrina and Rita, the Legislature enacted La. R.S. 9:5822, which provided for a limited suspension of prescription, and La. R.S. 9:5823, which suspended legal deadlines. The case of *Huth v. Pickering*, 07-181 (La. App. 5 Cir. 8/28/07), 966 So. 2d 652, *writ denied,* 2007-1889 (La. 11/21/07), 967 So. 2d 1157, provides an example of how limited suspension worked under those statutes.

**C.  The Legislature's extension for "deadlines in legal proceedings" does not apply**

Plaintiff may try to argue that his claims are timely because the Legislature provided for additional tolling for "deadlines in legal proceedings." La. R.S. 9:5830. That approach would be misguided. That section states, in relevant part:

> **§ 5830. Suspension of legal deadlines; extension of legal deadlines; contradictory hearing**
>
> A. All deadlines in legal proceedings that were suspended by Proclamation Number JBE 2020-30 and any extensions thereof shall be subject to a limited suspension or extension until July 6, 2020; however, the suspension or extension of these deadlines shall be limited and shall apply only if these deadlines would have otherwise expired during the time period of March 17, 2020, through July 5, 2020. The right to file a pleading or motion to enforce any deadline in legal proceedings which would have expired during the time period of March 17, 2020, through July 5, 2020, shall expire on July 6, 2020.

*Id*.

In this section, the Legislature addressed a different issue the Governor suspended: deadlines in ongoing cases. *See* 75 JBE 2020 ("In addition, all other deadlines in legal proceedings in all courts, administrative agencies, and boards shall remain suspended until Monday, June 15th"). The Legislature provided a safety-valve for those already in litigation caught up in the uncertainty of court deadlines during the pandemic:

> B. Notwithstanding the provisions of Subsection A of this Section and to the extent that deadlines in legal proceedings were not suspended by Proclamation Number JBE 2020-30 and any extensions thereof, if a deadline in a legal proceeding lapsed during the time period of March 17, 2020, through July 5, 2020, a party shall have the right to seek an extension or suspension of that deadline by contradictory motion or declaratory judgment. The party seeking the extension shall bear the burden of proving that either the party or his attorney was adversely affected by the COVID-19 public health emergency and, but for the adverse effects of the COVID-19 public health emergency, the legal deadline would have been timely met. For good cause shown, the court shall extend the deadline in the legal proceeding, but in no instance shall the extension be later than September 1, 2020.

*Id*.

While "legal proceedings" is not defined by statute, a natural reading of the Legislature's enactment, in response to the Governor's actions, contemplates ongoing legal proceedings at the time of the enactment. The Legislature's actions addressing prescription and peremption would be hollow if a subsequent section, addressing a different issue, subsumed the Legislature's mandate on a specific issue. *Catahoula Par. Sch. Bd. v. Louisiana Mach. Rentals, LLC*, 2012-2504 (La. 10/15/13), 124 So. 3d 1065, 1079 (specific statute controls over the general). Further, this section addresses only a party's ability to request an extension of deadlines in "legal proceedings" rather than allowing for an extension of the right to file suit. The Legislature knows how to act, and it could have provided for tolling in filing suit as it did for deadlines in "legal proceedings" in this section. *See Int'l Paper Co. v. Hilton*, 2007-0290 (La. 10/16/07), 966 So. 2d 545, 558–59 (applying "*Expressio Unius est Exclusio Alterius*, which dictates that 'when the legislature specifically enumerates a series of things, the legislature's omission of other items, which could have easily been included in the statute, is deemed intentional.'").

This suit was not a "legal proceeding" subject to suspension or additional tolling by the Legislature. The specific rules concerning prescription contained in La. R.S. 9:5829 apply. Thus, Plaintiff's claims remain time-barred.

### D.  The Louisiana Supreme Court's Hurricane Laura order does not apply here

Plaintiff offers a fallback position: the Louisiana Supreme Court ordered a Hurricane Laura suspension under La. C.C.P. art. 3472.1. [Doc. 1-2, p. 43]. Like before, there are significant problems with this argument. Article 3472.1 was enacted and signed on June 25, 2020. *See* Louisiana Legislature Acts 2020, 1st Ex. Sess., Act No. 3, § 1, eff. June 25, 2020. It does not appear that the Louisiana Supreme Court has used this new procedural rule to enter any COVID-19 orders. *See* https://www.lasc.org/COVID19 (all COVID-19 orders).

13

Instead, Plaintiff invokes Hurricane Laura, where the Governor declared a State of Emergency on August 21, 2020. *See* La. Sup. Ct. Order, August 28, 2020; [Doc. 1-2, Cm/ECF p. 43]. But, by the time the Governor and Louisiana Supreme Court acted, this suit was already time-barred. A later declaration, under a newly existing rule of procedure, cannot resurrect an already stale claim. Plaintiff's suit was untimely under any approach, and it should be dismissed.

****

Plaintiff's claims, under federal and state law, are time-barred. The one-year period applicable to Plaintiff's claims under state law – and by extension Section 1983 - passed; Plaintiff failed to take advantage of the "limited" suspension afforded by Louisiana Legislature; and the Louisiana Supreme Court's hurricane order did not revoke his stale claim. Plaintiff's suit is prescribed on its face and time-barred, and there is no applicable basis for tolling.

## VI.     Plaintiff fails to state a claim under Section 1983 against the City

In his Petition, Plaintiff asserts that his constitutional rights were violated by the officers in their official capacity, [Doc. 1-2, ¶ 31], and against the City directly, *id*. at ¶ 27. Plaintiff fails to state a claim against the City under Section 1983.

A plaintiff can bring a § 1983 claim against municipalities and municipal officials in their official capacity.[7] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). Municipalities are not vicariously liable under § 1983 for the conduct of its employees under the doctrine of *respondeat superior*; instead, a municipality can only be liable where the municipality itself causes the constitutional violation. *Id.* at 694–95. To state a claim for municipal liability under § 1983, a plaintiff must identify: a policymaker; an official policy, practice, or custom of which the policymaker can be charged with actual or constructive knowledge; and a violation of

---

[7] A suit against a municipal official in his official capacity is no different than from a suit against the municipality itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

constitutional rights whose "moving force" is the policy or custom. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir.2002); *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). "In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff." *McConney v. City of Houston*, 863 F.2d 1180, 1184, n. 2 (5th Cir. 1989).

"For purposes of *Monell* liability, '[t]he final policymaker is the official or body upon whom state or local law has conferred the power to adopt rules governing the conduct of the entity's employees; merely granting an employee discretionary authority does not make the employee a final policymaker.'" *Campbell v. Sturdivant*, No. 3:20-cv-00068, p. 17 fn. 4 (W.D. La. November 25, 2020) (citation omitted). "An official policy, for purposes of § 1983 liability, is '[a] policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority.'" *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir.1984) (*en banc*)). Sometimes, "a single decision by a policy maker may, under certain circumstances, constitute a policy for which a [municipality] may be liable," *Brown*, 219 F.3d at 462, but that "exception is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (citations omitted).

On the other hand, "[c]ourts have defined custom [and practice] as a 'persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Anthony v. Sch. Bd. of Iberia Par.*, 692 F. Supp. 2d 612, 624 (W.D. La. 2010) (citations omitted). When a custom or practice is asserted, a plaintiff must show "actual or

15

constructive knowledge" of the practice or custom attributable to policymaker. *Valle*, 613 F. 3d at 542 (citations omitted). "Isolated violations are not the persistent, often repeated, constant violations that constitute custom or policy." *Bennett*, 728 F.2d at 768 n.3 (citations omitted).

Here, Plaintiff's allegations fail to state a claim against the City under Section 1983. In the Petition, Plaintiff states that the City (along with all the other public entities named) is liable for: "improper screening of. . . officers who participated in the beating"; "hiring of. . . negligent officers"; "failing to properly train and supervise [the officers] regarding the constitutional limitations of the use of excessive force"; and "failure to promulgate and operationalize a constitutional use of excessive force policy." [Doc. 1-2, ¶ 27].[8] But Plaintiff does not plead *any facts* that would support these causes of action.

For example, "[t]o state a claim for municipal liability for failure to train or supervise, a plaintiff must allege (1) 'a decision by a decisionmaker that amounts to a policy' (2) that was 'so deliberately indifferent to the rights of the citizens that the [municipality] fairly can be said to be culpable for the injury,' and (3) 'sufficient causation between the specific policy decision and the resulting constitutional injury.'" *Oliver v. Gusman*, No. CV 18-7845, 2020 WL 1303493, at *7 (E.D. La. Mar. 19, 2020) (quoting *Brown*, 219 F.3d at 457). Further, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). None of those elements are present here. Specifically, Plaintiff does not identify what decision the decisionmaker made about training, how the decision was "deliberately indifferent," or how that

---

[8] Of course, the City could not be liable for the acts of other entities concerning their policies, their training, or the supervision or hiring of their employees. *See* La. R.S. 42:1441.3(F).

decision was causally connected to the alleged violation here. Plaintiff also does not point to any pattern of similar constitutional violations.

Additionally, Plaintiff's claim of improper hiring or screening also fails for lack of factual support. To establish a claim for improper hiring or inadequate screening, a Plaintiff must again show "deliberate indifference," which requires proof that "adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right[.]" *Bryan Cty.,* 520 U.S. at 411. Here, putting aside that the MPD employee alleged to have been "involved" is not even named, the allegations of the Petition and Amended Complaint "do *not* reasonably support an inference" that it would have been apparent to anyone at the City or MPD that the alleged constitutional violations suffered by Plaintiff were a "highly predictable consequence" of any screening or hiring practice. *Covington v. City of Madisonville, Texas*, 812 F. App'x 219, 226 (5th Cir. 2020) (emphasis in original). Simply put, there are no allegations concerning the City or MPD's hiring practices in general or with respect to this unknown officer. Thus, these claims should be dismissed.

Further, Plaintiff complains of the alleged failure to "promulgate and operationalize a constitutional use of excessive force policy."  It is unclear whether Plaintiff believes the MPD does not have a "use of force" policy at all, or whether he believes that the MPD's policy is insufficient. A municipal "policy" must be a deliberate choice by a municipality's policymaker to be actionable. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). Likewise, a failure to adopt a policy must be an "intentional choice" that is deliberately indifferent to the rights of citizens. *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992). Here, Plaintiff simply states that the City is liable for the failure to promulgate a "constitutional" policy without pleading any facts concerning

17

deficiencies in the City's existing policies or pleading any facts showing that the City or MPD made an "intentional choice" not to adopt a policy. As such, Plaintiff fails to state a claim.

Finally, Plaintiff also claims in his Petition that the Defendants (presumably including the City, and under an incorrect *respondeat superior* theory) are liable for malicious prosecution and violating the Fourth Amendment for an arrest without probable cause, false arrest, and malicious prosecution. [Doc. 1-2, ¶¶ 29, 35]. First, there is no "freestanding constitutional right to be free from malicious prosecution." *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003). To the extent that Plaintiff insists that he was later arrested without probable cause, or on the basis of a falsified police report, or that there is no basis for his continued, ongoing prosecution, a couple points must be made: 1) there is no allegation that the City or any of its employees arrested Plaintiff – he claims that a warrant was secured days later solely by Deputy Ginn (a Ouachita Parish Sheriff's Office employee), [Doc. 1-2, ¶ 22 and CM/ECF p. 13]; and 2) a state court judge, following a contradictory hearing at which evidence was adduced, independently found that probable cause existed for three of the counts Plaintiff is charged with, [Ex. 1]. Thus, there is no claim against the City (or its employees) for malicious prosecution or arrest without probable cause.

All federal law claims against the City should be dismissed for failure to state a claim.

## VII.    Plaintiff fails to state a claim against the City under state law

Plaintiff also brings claims against the City under state law for its own alleged negligence and under a theory of vicarious liability. These claims should be dismissed for failure to state a claim.

**A.  Plaintiff's state law claims against the City itself should be dismissed**

Like his federal law claims, Plaintiff asserts a tort claim against the City for "negligent hiring, training, and retention" of the unidentified MPD officer, and for failing to "instruct, supervise, or control" the officer. [Doc. 1-2, ¶¶ 42-43].

"A claim against an employer for the torts of an employee based on the employer's alleged direct negligence in hiring, retaining, or supervising the employee generally is governed by the same duty-risk analysis used for all negligence cases in Louisiana." *Cote v. City of Shreveport*, 46,571 (La. App. 2 Cir. 9/21/11), 73 So. 3d 435, 440 (citing *Griffin v. Kmart Corp.*, 00–1334 (La.App.5th Cir.11/28/00), 776 So.2d 1226, 1231). The duty-risk analysis is a four-pronged inquiry: 1) "Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred?"; 2) "Did the defendant owe a duty to the plaintiff?"; 3) "Was the duty breached?"; and 4) "Was the risk, and harm caused, within the scope of protection afforded by the duty breached?" *Roberts v. Benoit*, 605 So. 2d 1032, 1041 (La. 1991), *on reh'g* (May 28, 1992).

For much of the same reasons his federal claims fail, Plaintiff does not state a claim for negligence against the City *itself* under state law. Plaintiff does not plead any facts showing that that the City negligently hired, supervised, or trained the unidentified employee in this case. There are no allegations concerning the unidentified employee's alleged history that make it plausible that he was negligently hired; there are no facts showing that the City had any improper training practices or that the unknown employee received improper training; and there are no facts showing that the employee received negligent supervision. Plaintiff simply assumes, without support, that because an alleged incident occurred, the City must have been negligent. This is insufficient to state a claim against the City directly under state law.

19

### B.  Plaintiff's vicarious liability claims should be dismissed

Plaintiff also claims that the City is vicariously liable for the acts of its employee under La. C.C. art. 2320. State law clearly establishes that a public entity can only be liable for the acts of its *own* employees, and not those of another political subdivision. La. R.S. 42:1441.3(F). Thus, the City could only potentially be liable, under state law, for the acts of its unidentified employee. But, in this case, Plaintiff's vague factual allegations about the participation and involvement of unknown officers are insufficient to impute liability.

Plaintiff generally brings a claim against the unidentified officer for the use of excessive force.[9] "The use of force by law enforcement officers must be tested using the "reasonable force" standard established by La. C.Cr.P. art. 220[.]" *Simmons v. Hughes*, 2019-1389 (La. App. 1 Cir. 11/25/20). Article 220 states: "A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained." La. C.Cr.P. art. 220. "Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case."[10] *Simmons*, at p. 10.

Here, Plaintiff's claim fails because he has not established that the unknown and unidentified MPD police officer *actually* used force against the Plaintiff. Plaintiff's Petition and Amended Complaint are a hodgepodge of vague allegations with respect to the unknown officer(s).

---

[9] As noted previously, Plaintiff also brings claims for false arrest and/or malicious prosecution. But Plaintiff clearly alleges that only Deputy Ginn was involved in Plaintiff's subsequent arrest through the preparation of a warrant. Plaintiff does not allege any facts showing that the City or its unidentified employee had *anything* to do with the subsequent arrest or Plaintiff's later criminal charges.

[10] "Several factors to be considered in making this determination are the known character of the arrestee, the risks and dangers faced by the officers, the nature of the offense involved, the chance of the arrestee's escape if the particular means are not employed, the existence of alternative methods of arrest, the physical size, strength, and weaponry of the officers as compared to the arrestee, and the exigencies of the moment." *Simmons*, at pp. 10-11 (citing *Kyle v. City of New Orleans*, 353 So. 2d 969, 973 (La. 1977)).

Plaintiff claims that "one of the officers opened his car door" and began questioning him. [Doc. 1-2, ¶ 10]. Plaintiff asserts that "officers" began to pull him out of his vehicle, while other officers beg[a]n to arrive on the scene." *Id*. at ¶ 10. Plaintiff claims that, after he was pulled out, "officers began to hit and kick him." *Id*. at ¶ 11. Plaintiff claims that he did not resist, and that "officers continued to beat him for a period of time." *Id*. at ¶ 12. Later, Plaintiff claims that the video shows *an* "officer swinging downwards, punching Plaintiff repeatedly." *Id*. at ¶ 19. Plaintiff claims that "Deputy Ginn and other officers did in fact assert excessive force by beating" Plaintiff. *Id*. at ¶ 38. Finally, Plaintiff claims that the unidentified MPD employee "was involved in beating Plaintiff." [Doc. 19, ¶ 27].

Plaintiff's vague allegations fail to establish that the unidentified MPD officer used force against him. The video attached by Plaintiff does not establish that an MPD officer used force against him; Plaintiff admits he does not know how many officers were involved in the beating; and Plaintiff admits that some officers arrived on the scene after Plaintiff was removed from the vehicle. The videos attached by Plaintiff also show some officers *present* but not near Plaintiff at the time the alleged beating occurred. There are no allegations in the Petition or Amended Complaint establishing that some unidentified MPD officer *actually* used force on the Plaintiff at any time during the encounter. Thus, Plaintiff cannot state a claim for vicarious liability under state law.

### VIII.   Plaintiff fails to state a claim for punitive damages under state or federal law

In his Petition, Plaintiff pleads that he is seeking "[p]unitive damages under Section 1983 for torture and injury done with malice." [Doc. 1-2, p. 10, ¶50(11)].  Plaintiff is not entitled to punitive damages against the City under either state or federal law.

It is well-established that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, (1981). Further, "punitive or exemplary damages are not allowable under Louisiana law against any defendant unless expressly provided for by statute." *Jones v. City of Monroe*, No. 3:19-CV-00832, 2019 WL 5488603, at *12 (W.D. La. Oct. 8, 2019), *report and recommendation adopted*, No. 3:19-CV-00832, 2019 WL 5491922 (W.D. La. Oct. 24, 2019) (citing *Albert v. Farm Bureau Insurance Company*, 940 So. 2d 620, 622 (La. 2006)). "Louisiana law authorizes punitive damages in relation to only three acts: child pornography, driving while intoxicated, and criminal sexual activity during childhood." *Hunter v. Jefferson Par. Pub. Sch. Sys.*, No. 17-2015, 2017 WL 2910992, at *10 (E.D. La. July 7, 2017) (citations omitted). Thus, absent explicit statutory authority to seek punitive damages against the City, Plaintiff's claim against the City for punitive damages should be dismissed.

## IX.     Alternatively, Plaintiff's claims should be stayed due to his pending criminal charges

As noted previously, Plaintiff's criminal charges are currently pending. *State of Louisiana v. Aaron Larry Bowman, Jr.*, No. 19-CR-3840 (4th J.D.C., Ouachita Parish). On August 13, 2019, Plaintiff was charged, by Bill of Information, with four criminal counts: 1) Count 1 – improper lane usage in violation of La. R.S. 32:79; 2) Count 2 – resisting an officer by flight in violation of La. R.S. 14:108.1; 3) Count 3 – resisting an officer with force or violence in violation of La. R.S. 14:108.2; and 4) Count 4 – simple battery on a police officer in violation of La. R.S. 14:34.2. [Ex. 1]. Following a preliminary examination, Count 2 was dismissed, but all other charges remain pending. *Id*. Plaintiff's suit for damages should be stayed pending the outcome of his criminal case.

In *Heck v. Humphrey*, the Supreme Court held that a claim under § 1983 is barred if success in the suit would necessarily imply the invalidity of an outstanding criminal conviction or a

22

plaintiff's present confinement. *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Wallace v. Kato*, the Supreme Court declined to extend *Heck* to bar claims filed while criminal cases are pending or anticipated, but the Supreme Court nevertheless cautioned courts against proceeding to address claims that are the subject of pending criminal litigation. *Wallace v. Kato*, 549 U.S. 384, 393-94 (2007).  There, the Supreme Court stated that, "[i]f a plaintiff files a . . . claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Id*. In the excessive force context, a stay is appropriate when a future conviction on criminal charges might invalidate Plaintiff's claim that the force used was excessive. *Grant v. Dailey*, No. CIV.A. 11-1374, 2012 WL 368709, at *2 (E.D. La. Feb. 3, 2012).

Plaintiff is facing two counts in his criminal case that directly implicate his claim for excessive force: resisting an officer by force or violence in violation of La. R.S. 14:108.2(A)(1); and simple battery of a police officer in violation of La. R.S. 14:34.2. If Plaintiff is convicted of either of these counts, his claim for excessive force might be barred by *Heck*. For similar reasons, the district court in *Grant v. Dailey* held that a stay was appropriate where "pending criminal charges—resisting an officer by flight, disturbing the peace and battery of a police officer—are of a type and character that a conviction on these charges may bar" a claim for excessive force. *Grant*, 2012 WL 368709, at *2 (collecting cases). If Plaintiff's claims are permitted to proceed, then this Court should stay the litigation pending resolution of the ongoing criminal case.

## X.  Conclusion

Plaintiff's claims against the City and the MPD should be dismissed with prejudice. The MPD lacks the capacity to be sued, Plaintiff's claims are time-barred, Plaintiff fails to state a claim

against the City under federal or state law, and Plaintiff fails to state a claim against the City for punitive damages. If the Court determines that any of these claims should proceed, however, this case should be stayed pending the outcome of Plaintiff's ongoing criminal matter.